## STATE OF IOWA V. SARAH E. BURGOR, Appellant.

1 **Arson: Evidence.** Verdict of guilty is sufficiently sustained by
2 the evidence.

**Practice:** NEWLY DISCOVERED EVIDENCE is no ground for new trial
3 in a criminal case.

**Instruction:** HARMLESS ERROR. Assuming that it is the duty of
3 the court to charge on its own motion, that if a wife commit a
crime in the presence of her husband, the presumption of coercion must be overcome, it was not prejudicial to not so instruct,
4 where the testimony and verdict show that the act was not done
in the presence of the husband.

*Appeal from Scott District Court.*—HON. C. M. WATERMAN, Judge.

TUESDAY, APRIL 2, 1895.

Defendant was jointly indicted with her husband, Harvey Burgor, for the crime of setting fire to an inhabited building. Upon a trial to a jury she was convicted, and her husband acquitted. From a sentence of imprisonment in the penitentiary for nine months, she appeals. —*Affirmed.*

*R. B. Cook* for appellant.

*Milton Remley*, attorney general, and *Thos. A. Cheshire* for the state.

Deemer, J.—The defendant, a Mrs. C. O. Seaman, and one Bertha A. Reynolds were in January, 1894, the owners of a summer hotel in Scott county, called the "Linwood," each owning an undivided one-third thereof. Each carried insurance on her interest in the sum of one thousand dollars, and, shortly before the fire in question, defendant took four hundred and fifty dollars insurance upon her furniture and household goods. The building in question was occupied by Dr. and Mrs. C. O. Seaman and two children, and by defendant and her husband. On the morning of January 4, 1894, Dr. and Mrs. Seaman left the building, about 11 o'clock A. M., to drive to Davenport. They returned shortly afterward, and again left the place about 11:45, and drove away in the direction of the town of Buffalo, which is in the opposite direction of Davenport. About this same time, Harvey Burgor left the building, and started for Buffalo on foot. He was walking quite fast down the railroad track when seen by a neighbor who lived three or four blocks from the hotel. He kept looking back in the direction of the hotel. Shortly after he had passed this neighbor's house, and, as near as we are able to judge, about 12:10 P. M., this neighbor, Westphal, noticed smoke coming out of the cupola of the hotel. This cupola was, as we understand it, near the center of the building, and was about ten feet in diameter. Westphal, on making this discovery, ran to the house of a man named Dutcher, and gave the alarm. One Swanson was at Dutcher's house, and upon

learning of the fire he ran for the premises, and reached there ahead of Westphal. These two persons were the first to enter the house. They testified that they ran up to the second story, and there found the defendant, who was the only person left in the house after her husband went away; that they found her at the head of the stairs, with some feathers or cotton, or something that looked like packing or filling out of a mattress, blazing in her hands; that the hall carpet was strewn with the same material, and that the carpet was on fire near where she stood; that the whole hall was full of smoke; and that there was smoke issuing from crevices in the doors to different rooms on this floor, but no fire or smoke was coming down from above. Westphal testified that he said to Mrs. Burgor, "For God's sake, throw that out of the window!" (speaking of the burning material in her hands), and that she, in response, pointed west, to the staircase, and said, "Save Mrs. Reynolds' furniture." Swanson, who had reached the hotel before Westphal, testified that when he ran up the stairs, to the second story, he found them covered with feathers, and just as he arrived at the landing the defendant came out of a room opposite, with something burning in her hands; that he soon ran into the room from which defendant came, and saw a feather bed lying on two chairs, one end of which was cut open and was on fire. He then ran to another room on the same floor, and found it full of smoke. There he saw a rocking-chair standing in the center of the room, upon which were some burning feathers and rags. He threw the chair out of the window, and this chair was identified and produced in evidence upon the trial. In neither of these rooms was there any fire from the ceiling, or at any other place than as stated. It should also be stated, in this connection, that neither of these rooms was under the cupola, nor was there at any place on this

floor, at any time, any evidence that the fire or smoke had come from above. There was smoke coming from the doors of many rooms on this floor. Both witnesses say that defendant was not excited, and that she directed those who were there to save Mrs. Reynolds' things. Other witnesses testified to smoke issuing from many rooms on the second floor, but, except as stated, none saw any fire until it came down through the ceiling from above. Some of the witnesses, other than Westphal and Swanson, saw the carpet on fire near where defendant was first discovered, and found feathers scattered over the floor. While one of the witnesses was attempting to take off a door, the defendant remarked, "Don't take the doors off, or we will not get any insurance." The smoke was so dense, and the fire had so far progressed, that none of the witnesses were able to go up on to the third floor. The defendant, in her testimony, said that she was in the kitchen, and heard a noise up stairs; that she went up, and found the fire on the chair which was introduced in evidence, and saw an old tick and some unbleached cotton smouldering thereon; that she thought she had put out this fire, and started down stairs, when she met Swanson. She also saw feathers scattered around the rooms. But she insisted that she did not set out the fire, and said that she supposed it caught from a defective flue. There was other testimony tending strongly to contradict some of the material facts relied upon by the state, and an effort was made to impeach the witnesses Westphal and Swanson. Harvey Burgor also produced evidence of an alibi, and both defendants introduced evidence of their previous good character.

I.  It is first insisted that the verdict is not sustained by the testimony.  If the witnesses whose testimony we have recited were truthful, and are to be believed, then there is no doubt about the correctness of the verdict.  And while some of the witnesses, at other times, made contradictory statements to their testimony while on the stand, yet, in view of the explanation given therefor, the jury was justified in believing them notwithstanding their impeachment.  We do not think there is enough doubt of the defendant's guilt, upon the testimony adduced, to justify us in interfering with the verdict.

II.  Defendant contends also that some of the testimony on which she was convicted was manufactured, and that evidence discovered since the trial discloses the fact.  Attached to the motion for a new trial were the affidavits of several persons, all but one of whom were witnesses upon the trial, to the effect that the chair introduced in evidence was not the one thrown out of the window of the burning building by Swanson, if, indeed, he threw any out, and that, if it be the chair, it is not in the condition it was when thrown from the building; that it is much more burned and broken than the one taken from the building.  It is so well settled as not to require the citation of authorities that newly-discovered evidence is not a ground for new trial in a criminal case.  Moreover, if it were, the court below did not abuse its discretion in denying it in this case.  The defendant, while on the witness stand in her own behalf, admitted that the chair produced by the state was the one she saw in the room, on which something was burning or smouldering, and all but one of the affiants to the motion for a new trial were witnesses at the hearing, and most of them saw the chair at the time of the trial.  The motion

for a new trial, in so far as it was based upon these affidavits, was properly overruled.

III.   Lastly, it is insisted that the court erred in not instructing that, if the defendant committed the crime in the presence of her husband, the presumption obtained that she was coerced by him, and that this presumption would have to be overcome before defendant could be rightly convicted. Even if it be conceded that the court might properly have given such an instruction, had it been asked, yet we do not think it was prejudicial error for him to neglect to give it on his own motion.   As we read the record, there is no testimony, except a very strained inference from collateral facts, that the wife was in the actual presence of her husband when the fire was set out.   Her testimony is that her husband was not present when the fire was set out.   And the jury found by their verdict that Harvey Burgor was not guilty, which necessarily involves a finding that he was not present when the wife set out the fire.   Manifestly, there was no prejudicial error committed by the court in failing to give such an instruction.

We have examined the whole record with care, and find no prejudicial error.   The judgment is *affirmed.*