STATE OF IOWA, Appellee, v. IRA PAVEY, Appellant.

HOMICIDE: Murder—Evidence. Record reviewed, and held to sus-
1  tain a verdict of guilty of murder in the first degree.

CRIMINAL LAW: Evidence—Circumstantial Evidence. An accused
2  may not complain of the refusal of an instruction as to the pro-
   bative force of circumstantial evidence when the subject is elabo-
   rately and correctly covered in the instructions given by the court.

CRIMINAL LAW: New Trial—Inconsequential Newly Discovered Evi-
3  dence. Newly discovered evidence is not a ground for new trial in
   criminal cases. Especially is this so when such evidence is incon-
   sequential.

HOMICIDE: Murder—Review of Death Sentence. Principle reaf-
4  firmed that a sentence of death will not be commuted by the appel-
   late court in the absence of a legal reason.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON,

Judge.

JUNE 21, 1922.

THE defendant was indicted, charged with the crime of murder in the first degree. The charge is that, on or about March 28, 1919, he shot and killed one Claude Letner. The jury found defendant guilty, and fixed the penalty at death. Defendant's motion for new trial was overruled, and the court pronounced judgment in accordance with the verdict, and fixed the date when defendant should be executed. The defendant appeals.—*Affirmed.*

*Gerrit Klay,* for appellant.

*Ben J. Gibson,* Attorney General, *John Fletcher,* Assistant Attorney General, *Anthony Te Paske,* County Attorney, and *P. D. Van Oosterhaut,* for appellee.

PRESTON, J.—The errors assigned are as to the alleged insufficiency of the evidence to support the verdict; the refusal to give a requested instruction, and the giving of another instruction by the court; overruling the motion for new trial on the ground of newly discovered evidence; and lastly, that the punishment is excessive.

1. The defendant did not testify, and no evidence was introduced on his behalf. Appellant states in argument that deceased, with the notorious outlaw Red Burzette, Wesley Schach, and Harvey Springer, was engaged in bringing whisky from Trosky, Minnesota, to Sioux City, for illegal sale. The State's evidence tends to show that, a day or two before the killing, deceased had purchased nine cases of whisky in the town of Trosky, and was taking them to Sioux City for the purpose of sale; that he was driving a Ford touring car, and had the whisky in the back part. About dusk that evening, at a point in Sioux County, he overtook some cars that were stalled in a muddy place in the road. While he was waiting for the stalled cars to be pulled out, two cars came from the direction opposite to that in which he was driving. One was a large Buick car, and the other a Dodge roadster.

1. HOMICIDE: murder: evidence.

Burzette and his common-law wife were in the Buick car. Defendant was in the roadster, and it seems to be conceded that he was a member of the Red Burzette gang, as counsel put it, that operated out of Sioux City. After deceased was able to pass the mud hole, he proceeded in the direction of Sioux City. Defendant and Burzette and his wife turned about and followed the Letner car. This was some 30 minutes after Letner had continued on his way. After defendant and the other two had proceeded a mile or so, Mrs. Burzette was placed in the Dodge roadster, and told to remain there, while defendant and Red Burzette, driving the Buick car, continued in pursuit of deceased. They overtook Letner, crowded his car against an embankment at the side of the road, shot him through the head, dragged the body through a field for about 100 feet, and placed it in a dead furrow, where it was later discovered. Defendant and Burzette then took the whisky from the Letner car, loaded it into the Buick, and drove back to where they had left Mrs. Burzette in charge of the Dodge car. They left her in the Dodge car about an hour, or such a matter. She then got into the Buick car, and defendant got into the roadster; and, with Burzette driving ahead, they drove to Wessington, South Dakota, where they arrived Sunday, stopping on their way at Huron. The whisky taken from the Letner car was sold in Wessington to a man by the name of Graves, who paid $550 for it. Graves was a witness on the trial of this case, as was Mrs. Burzette. One or more indictments were returned against defendant and Mrs. Burzette in regard to this transaction. Defendant went by the name of Clark in Wessington. Stopping at the hotel in Wessington were Graves and a woman by the name of Lewis, and Red Burzette and his wife. The Lewis woman read of the killing in the paper and discussed it with the other parties named, and remarked that she thought it was a terrible crime. When Graves, Burzette, and defendant went to the garage from the hotel, defendant said to Graves:

"Make that damn woman shut her mouth about that murder, and tell her it was chicken blood, the stuff that was there on the cartons of whisky."

Graves testified that Burzette, in the presence of defend-

ant, Pavey, told him how they happened to kill Letner, and explained that they had to kill him, in order to get the whisky away from him. In that conversation, Burzette explained to Graves that Pavey had shot Letner. No denial of such statement was made by defendant. There was blood on the whisky bottles and cartons that were delivered by Burzette and Pavey to Graves. When Letner purchased the whisky at Trosky, he had in his possession some $900 in money. The record does not show how much Letner paid for the whisky, but it was sold to Graves at $50 a case. It is claimed by the State that, after Letner paid for the whisky, he had some $400 or $500 left. When he was searched, after the murder, but 16 cents in change was found in his pockets. Letner bled profusely from the wound, and there was considerable blood inside his car, and there was blood in the Buick car in which the liquor had been hauled by Burzette to Wessington. As we understand the record, the parties arrived at Wessington some time on Sunday, March 30th. There is some confusion and evidently mistake in the dates, or some of them. As we understand it, the killing was on Friday evening, the 28th. The autos were pulled out of the mud about 7 or 8 o'clock in the evening. The autos, or some of them, were stalled about two hours. De Boer, residing in Sioux County, helped pull the cars out of the mud hole; describes the different cars and the people present. It seems that defendant's car and the Burzette car again got stalled near Huron. Witness Korff testifies to the Dodge roadster's being stuck in the mud near his place Sunday forenoon. Two men, one of them the defendant, came to him and asked for help. One of the two men was a red-headed man. There was also a third party with them, as driver. He helped pull the car out with his horses, and charged $2.50. Defendant took a roll of bills out of his pocket, and gave witness $5.00. He says they did not care to wait to have him get the change from the house; that defendant is the one who paid him the money; and that he had a roll of bills. Witness describes the roll of bills as about the size of a tumbler. The $5.00 was taken from this roll. He says it was between 9 and 11 o'clock Sunday morning that they were at his place. This was after Letner had been killed, and before Graves paid defendant

$550 for the whisky. Graves so paid defendant for the whisky on Monday, March 31st. Graves testified that Burzette and defendant talked about their trip to get the Dodge roadster to Wessington on Sunday; said they had been stalled in mud holes, and had a farmer pull them out. He says he paid defendant for the whisky which he received from them from that Buick car on Sunday,—the car in which defendant, Burzette, and Mrs. Burzette had arrived at Wessington. Mrs. Lewis testifies that she saw Graves pay defendant $550 for the whisky on Monday, at the hotel. There are other circumstances. Further details are unnecessary. The evidence abundantly supports the verdict.

2. The defendant requested an instruction on the question of circumstantial evidence, which it is thought was not covered by the instruction given by the court on that subject. The

2. CRIMINAL LAW: evidence: circumstantial evidence. requested instruction is quite long, about two pages of the abstract, and we shall not set it out in full. It starts out:

"You are further instructed that, where a conviction for a criminal offense is sought upon the circumstantial evidence alone, the State must not only show by a preponderance of the evidence that the alleged facts and circumstances are true, but they must show such facts and circumstances as are absolutely incompatible, upon any reasonable hypothesis, with the innocence of the accused, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the accused; and in this class of cases, the jury must be satisfied beyond a reasonable doubt that the crime has been committed by someone in manner and form as charged in the indictment, and then they must not only be satisfied that all the circumstances proved are consistent with the defendant having committed the act, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the defendant is the guilty person. * * * It is essential, therefore, that the circumstances, taken as a whole, and giving them their reasonable and just weight, and no more, should, to a moral certainty, exclude every other hypothesis. If, then, all the facts and circumstances established by the evidence, beyond a reasonable doubt, cannot be reconciled with any reasonable hy-

pothesis of the defendant's innocence, but do concur in showing the defendant's guilt, and when taken together, are sufficient to prove, beyond a reasonable doubt, the guilt of the crime charged in the indictment, or any other crime included therein, then you are instructed that it is your duty to convict the defendant of the crime so established," etc.

It is apparent that the offered instruction is not correct in some particulars,—for instance, where it uses the word "preponderance," instead of "reasonable doubt." Everything in the offered instruction, in so far as it was proper and applicable, was given by the court in Instruction No. 11. No. 11 is longer than the one offered. We shall not set it out in full. Direct evidence and circumstantial evidence were defined. Among other things, the court said that circumstantial evidence is the proof of such facts and circumstances connected with and attending or surrounding the transaction in question. as tend to establish the guilt of the party accused of the offense charged against him, and from which the guarded judgment of a reasonable, considerate, and prudent man would be impressed with an abiding conviction that accused was guilty thereof; that all the criminating circumstances, if any, must, when taken together, under the rules hereinafter stated, "be amply sufficient to satisfy and convince your mind, to the exclusion of every reasonable doubt, of the guilt of the defendant, in order to convict;" that circumstantial evidence is legal and competent in criminal cases, and will be deemed quite as satisfactory as direct and positive evidence, whenever the circumstances proven are sufficient to establish the guilt of the accused to the exclusion of every reasonable doubt, and are absolutely incompatible with any rational hypothesis of innocence; that, to convict upon circumstantial evidence alone, the circumstances proven and established must be absolutely not only incompatible with the innocence of the accused, upon any rational theory, but also incapable of explanation or any other reasonable hypothesis than that of his guilt; that, when any circumstance. so proven is as consistent with innocence as with guilt, the jury is bound to resolve and consider the same in favor of his innocence. And further, that it was for the jury to say, from all the evidence,

what, if any, such criminating circumstances have been proven, and what weight, if any, the jury would give thereto; and that the jury should bear in mind that the burden is upon the State to prove such criminating circumstances as will, under the instructions given on this subject, be sufficient to convince and drive the minds of the jurors to an abiding conviction of the guilt of the accused, and exclude therefrom every reasonable hypothesis of innocence; that at no stage of the proceedings is the defendant required to make any proof as to his innocence; and so on. This is not all of the instruction. As said, it covers all that is included in the offered instruction to which defendant was entitled. Another complaint of the instruction given is the statement that circumstantial evidence is legal and competent, and will be deemed quite as satisfactory as direct and positive evidence, whenever the circumstances proven are sufficient to establish guilt, etc. No cases are cited by appellant on this proposition. The particular objection is to the statement that circumstantial evidence may be quite as satisfactory as direct and positive evidence, etc. Similar language in an instruction was approved in *State v. Hassan*, 149 Iowa 518, 531. See, also, *State v. Walker*, 133 Iowa 489, 497. See, also, *State v. Noelchen*, 53 Iowa 310, 315, where the language is even stronger than that in the instant case. There was no error in this respect.

3. As a part of the motion for new trial, defendant attached affidavits of his counsel on the question of diligence, and the affidavit of Harvey Springer, whom appellant has desig-

3. CRIMINAL LAW: new trial: inconsequential newly discovered evidence.

nated in argument as a member of the Red Burzette gang, and who was, as we understand it, in the party at the mud hole, at or about the time of the killing; also, the affidavits of Springer's wife, and of one De Monk. The affidavits of Springer and wife have reference to the meeting of automobiles at the time when the autos were stalled in Sioux County, and De Monk's affidavit has reference to the presence in his garage of certain parties. De Monk is unable to fix a date within several months of the transaction about which he testifies, and does not identify this transaction.

Newly discovered evidence is not a statutory ground for

a new trial in a criminal case. *State v. Watson,* 102 Iowa 651; *State v. Cater,* 100 Iowa 501; *State v. King,* 97 Iowa 440; *State v. Harris,* 97 Iowa 407; *State v. Dimmitt,* 88 Iowa 551; *State v. Bowman,* 45 Iowa 418; *State v. Pell,* 140 Iowa 655, 669. In any event, to justify the granting of a new trial on the ground of newly discovered evidence, it must appear with some degree of certainty that the new evidence would change the result. *State v. Burge,* 7 Iowa 255; *State v. Leuth,* 128 Iowa 189; *State v. Lowell,* 123 Iowa 427; *State v. Pell,* supra. The evidence in the instant case was not such. The trial court's comment upon the evidence was that the testimony of Springer and wife, after the testimony of De Monk, was corroborative, rather than otherwise. There is a certain discretion in the trial court in ruling on motions for new trial, and such discretion will not be interfered with on appeal; unless it appears that the discretion has been abused. *State v. Seevers,* 108 Iowa 738; *State v. Nadal,* 69 Iowa 478; *State v. Pell,* supra. No cases are cited by appellant on this proposition.

4. Finally, it is thought that the punishment is excessive. The only case cited is *State v. Olander,* 193 Iowa —. The proposition is that, under Code Section 5462, the court has power to reduce or commute the sentence. It was so said in the *Olander* case; but further, that it would not be done, and should not be, unless there is some legal reason for it. We discover no such reason in the instant case. The evidence shows that it was a deliberate, premeditated, first-degree murder, to obtain whisky and money.

4. HOMICIDE: murder: review of death sentence.

The judgment is—*Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.