STATE OF IOWA, Appellee, v. JOE SIEGEL, Appellant.

No. 42699.

JANUARY 23, 1936.

REHEARING DENIED JUNE 19, 1936.

Yeaman & Yeaman, and George Gorder, and Kindig, Faville & Mathews, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, Assistant Attorney General, and Max E. Duckworth, formerly County Attorney, and M. E. Rawlings, present County Attorney, for appellee.

RICHARDS, J.—An indictment was found by the grand jury of Woodbury county charging defendant with first-degree murder of Glenn Gross. The jury found defendant guilty of manslaughter. From judgment upon verdict defendant has taken this appeal.

Defendant filed motion for new trial and assigns as error the overruling of same. In this motion defendant claimed he had not had a fair trial on account of alleged misconduct of the

jury and of bailiffs in charge of the jury and on account of alleged errors of, or abuse of discretion by, the court.

In support of the motion there was a showing by defendant that in the jury room there was talk that the county attorney had evidence that he did not use, and if he had produced it there would have been enough evidence for conviction. There was also a showing that juror Mrs. Ruth Broome stated in the jury room that during the trial of the case, while on a street car, she had overheard a well-dressed man say that at least three of the jurors had been bought; that Mrs. Broome intimated that the jurors voting for acquittal were the three who had been bought; that another juror, Mrs. Schwinn, asked one of the jurors who was voting for acquittal, "How much did you get out of this deal?" and said there was some reason for one of the jurors selling out because he was poor; and that another juror was voting for acquittal because he was working for a certain employer. There is a showing that the juror to whom this question was addressed assembled the jurors and asked if any of them had been bought or bribed and stated heatedly that he had not been and was unwilling to be accused of anything of that sort. The counter-showing by the state is that juror Mrs. Broome apologized for her statements and assured Juror Alingh that Mrs. Broome's only purpose in telling him of the occurrence was her belief the whole jury should know about it. There is a showing that the two bailiffs in charge of the jury permitted the jurors to use the telephone when they desired, calling up and conversing with various persons, some of this telephoning being from a booth equipped with a door that closed. The counter-showing is an affidavit of one of the bailiffs that he heard the conversation of the jurors telephoning. There was a showing that while the jury was out for meals the women jurors sometimes left the remainder of the jurors and went into stores to make purchases, and that the women jurors at times went to one side and talked to their husbands out of the hearing of the bailiffs and the rest of the jury. There was a showing that after the jury had deliberated for about 67 hours defendant moved the court that the jury be discharged, the motion being overruled; that thereafter, while the jury was out of the jury room for a meal, two of the jurors observed the headlines of a local newspaper stating: "Stick to it says Siegel judge. Defense loses motion to let jury quit task. No reason for disagreement;"

that what was so read was communicated to the other jurors when they had been in deliberation about 74 hours. There was a showing that on one occasion while the jury was out for meals two of them heard loiterers on the street say that defendant was guilty and there was no reason for disagreement, which occurrence was communicated to the other jurors. There was a showing that during the latter part of the deliberation the jurors were pretty well tired out, one juror to such extent that he lay on a bed with a severe headache and there was difficulty on some occasions in arousing him to vote. There is a showing that the jury remained in deliberation for a period of nearly 90 hours before reaching their verdict.

In considering the showing made, the affidavits of the jurors, that their verdict was or was not affected by what happened, have to do with matters that inhered in the verdict and are not to be considered. The question for our determination is whether these happenings and alleged misconduct of the jurors and bailiffs were of such a character as to have probably influenced or prejudiced the jury in the rendition of the verdict. State v. Clark, 210 Iowa 724, 231 N. W. 450.

With this rule in mind the remarks of the loiterers on the street do not appear to be of serious import, there being no showing made of any particular or peculiar facts in connection therewith warranting the conclusion that the jury gave weight or credence thereto. The same may be said as to the remarks in the jury room that the county attorney did not introduce all of the evidence, a careful examination of the records indicating that these remarks were not made as the statement of any information the juror claimed to have. The remarks appear to have been argumentative in character and probably so understood by the jury. With reference to the statement and insinuations made by juror Mrs. Broome and the question and statements ascribed by the showing to juror Mrs. Schwinn, little can be said in condonation of such conduct in the jury room. Unfortunate as is such failure of jurors to appreciate their oaths and duties, the real matter before us is whether these statements, questions, and insinuations, were of such a character that in the case at bar they probably influenced or prejudiced the jury in the rendition of its verdict. The defendant's showing is that these things happened after the jury had been deliberating for a considerable period and at a time when only three jurors were voting for ac-

quittal. It is the state's showing that these things happened early in the deliberations of the jury. But, however that may be, the record is clear that for many hours after these happenings no verdict was reached. It would also appear that after one of the jurors had indignantly resented the insinuations, and had called the matter to the attention of all the jury, and Mrs. Broome had offered her apology, there was an end to this manner of misconduct on the part of the two jurors and the matter became a closed incident for the remainder of the deliberation, continuing many hours. So it may be said that the misconduct of the two jurors had at least no immediate observable effect of a coercive character. Had these remarks been of such a nature as to be interpreted by the jurors as a statement on the part of Mrs. Broome that she had knowledge that there was a general rumor in the community that three of the jurors had been bought, the insidious nature and possible influence of the misconduct would be more apparent. But the remarks do not seem to run to that extent, the statement of the juror being merely the description of a chance remark she claimed to have heard on a street car. The indignation expressed by some of the jurors and the subsequent apology would indicate that the remarks of the two jurors had the appearance to the other jurors of being the expression of the personal attitude of Mrs. Broome and Mrs. Schwinn toward other jurors, in the heat of the discussion and arguments in the jury room, rather than a statement of any personal information as to the attitude of the outside public. It is difficult to come to a satisfactory conclusion as to the probable effect these occurrences may have had upon the jurors. We have read the record with more than usual care. We are constrained to hold that it cannot be said, under all the facts shown in the record in this case, that these occurrences probably influenced or prejudiced the jury in the rendition of their verdict.

 The court held the jury in deliberation for nearly 90 hours. Appellant urges this fact in support of his motion for new trial. His proposition is that in so doing the court compelled the jury to render a verdict which was not an expression of their conclusions resulting from a consideration of the evidence, but was the outcome of a test of physical and mental endurance. In connection with this proposition appellant points out that after the jury had deliberated about 67 hours the defendant's motion, that the jury be discharged, was overruled,

and that a few hours later that fact and the other contents of the newspaper headlines came to the attention of the jury. Appellant also urges in this connection the showing made that towards the end of their deliberations the jury was pretty well tired out, especially Juror Decker. It is appellant's contention that the long period of deliberation and the information conveyed in the headlines had a coercive effect on the jury, impressing them with the idea that only by reaching a verdict would they be released from the jury room. From common knowledge of petit juries, a cross-section of a community, it is hardly reasonable to assume that the jury could have had such belief, to the extent suggested by appellant. It is the record in this case that at no time did the jury request that it be allowed to come before the judge to gain any information in that respect, or to express any opinion on their part as to the improbability of a verdict. The record does show that there were communications between the court and the jury through the bailiffs in charge. There appears in the record no direct communication from the court to the jury that was coercive in its nature. The matter of discharging the jury on account of disagreement was discretionary with the court. It is true such discretion can be abused and juries can be held in deliberation until their verdicts are not true verdicts, in the manner appellant would ascribe to the rendition of the verdict in the case at bar. As one of the facts bearing on our conclusion, the record discloses that the jury was more or less active in their discussions and efforts to reach a verdict in the usual manner of juries during this long period of deliberation, and that a considerable number of hours toward the end of the deliberation was consumed in determining the degree of defendant's guilt, after a general agreement upon his guilt had been reached. In view of all the record, however, we are loathe to say that there was in this case prejudicial abuse of discretion in the length of the jurors' deliberation warranting the granting to defendant of a new trial.

 Section 13878, Code 1931, is specific that officers in charge of a jury deliberating in a criminal trial shall be sworn not to suffer any person to speak to or communicate with the jurors, and the section likewise forbids that such officers speak to or communicate with the jurors themselves except to ask them whether they have agreed upon a verdict. Although the conduct of the bailiffs was inexcusable in permitting jurors to communi-

cate with outsiders and to separate from the jury body in the manner that has been stated, the question before us is not the discussion of their misconduct, but is whether such misconduct probably influenced or prejudiced the jury in the rendition of its verdict. The district court exercising its discretion held that this misconduct of the bailiffs did not deprive defendant of a fair trial. Whether such holding was an abuse of discretion must be considered in the light of the whole record. It appears from the counter showing of the state that a bailiff heard the conversation of the jurors over the telephone, although of course there is no claim the bailiff heard what was said to the juror. From the record the district court would be warranted in finding that the conversations of the jurors pertained to personal matters unrelated to the case, and in finding that the departure of the women jurors from the jury body when they were going to and from meals were momentary incidents for the purchase of conveniences for such jurors. The court could also have found from the showing made that the brief conversations on the streets between women jurors and their husbands had solely to do with personal matters. Although with some misgivings, in view of the character of the misconduct of the bailiffs, we have concluded that there is not in this case a sufficient showing of prejudice to the defendant to warrant a reversal.

One of the grounds of appellant's motion for new trial was that the verdict was against the weight of the evidence, and another ground was that the court erred in not submitting to the jury included defenses below manslaughter. From the evidence in the record we think that there was sufficient evidence to sustain the verdict as rendered. We also find that the evidence did not warrant the submission of the lower offenses.

■■■ For a ground of defendant's motion for new trial he sets out alleged newly discovered evidence which he claims he could not with reasonable diligence have discovered and produced at the trial. With respect to such ground for new trial we quote from State v. Bowman, 45 Iowa 418, the following:

"We regret to say that there is no statute authorizing a new trial in a criminal action on the ground that testimony material to the defense has been discovered since the trial, and which could not with reasonable efforts be discovered previous thereto. Such is the rule in civil actions, and we are unable to see

why it should not prevail in criminal causes. But we cannot make law and must determine this cause as well as all others in accordance with the law as we find it to exist. The action of the court below was, therefore, correct. * * * We cannot but believe that, if all the evidence contained in the affidavits had been presented to the jury, they would not have found the defendant guilty. But, as has been said, we cannot afford him any relief; his remedy, if any he has, is before another department of the government.''

In State v. Baughman, 111 Iowa 71; 76, 82 N. W. 452, 454, it is said, ''The statute does not authorize a new trial on this ground,'' referring to the ground we are discussing, when urged in a criminal case. To the same effect, see State v. Whitmer, 77 Iowa 557, 42 N. W. 442; State v. Lee, 80 Iowa 75, 45 N. W. 545, 20 Am. St. Rep. 401; State v. Watson, 81 Iowa 380, 46 N. W. 868; State v. Burgor, 94 Iowa 33, 62 N. W. 696; State v. Graff, 97 Iowa 568, 66 N. W. 779; State v. Cater, 100 Iowa 501, 69 N. W. 880; State v. Watson, 102 Iowa 651, 72 N. W. 283; State v. Gulliver, 163 Iowa 123, 142 N. W. 948; State v. Pavey, 193 Iowa 985, 188 N. W. 593; State v. Barrett, 197 Iowa 769, 198 N. W. 36. The only case to which our attention has been called in which this court held that the district court erred in overruling a motion for a new trial on the ground under discussion is State v. Foster, 37 Iowa 404, but in the case there is no discussion of the question whether the statutes provide for granting new trial on such ground.

Following the repeated holdings of this court, that there is no statutory provision authorizing a new trial in a criminal case on the ground of newly discovered evidence, we are compelled to hold that the district court did not err in overruling the motion as to that ground. It is urged by appellant that in State v. Pell, 140 Iowa 655, 669, 119 N. W. 154, 159, it is said, ''Moreover, in a criminal case newly discovered evidence is not a ground for a motion for a new trial, although a new trial may undoubtedly be granted on that ground in a proper case, in the exercise of the court's discretion, in the interest of justice,'' and that in State v. Howard, 191 Iowa 728, 740, 183 N. W. 482, 487, the court cites the Pell case as authority for the statement that, ''The granting of a new trial upon that ground [newly discovered evidence] in criminal cases is discretionary.'' In neither of these

cases, however, did this court find the lower court erred in overruling the motion based on newly discovered evidence. There was a large measure of discretion vested in the lower court in passing upon the motion, and after a careful consideration of the entire record we are not of the opinion that in the case at bar the district court should have exercised any different discretion, in the interest of justice, by virtue of any inherent powers so to do the district court may have had.

Appellant's motion to strike plaintiff's amended abstract and appellant's motion to strike portion of appellee's supplemental brief are overruled.

The judgment of the district court is affirmed.—Affirmed.

DONEGAN, C. J., and all Justices concur.