State of Iowa, Appellee, v. W. O. Billberg, Appellant.

No. 45395.

FEBRUARY 18, 1941.

Purley Rinker, for appellant.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, C. L. Johnston, County Attorney, and E. L. Simmons, Special Prosecutor, for appellee.

OLIVER, J.—The indictment charged that on March 23, 1940, appellant, W. O. Billberg, "did wilfully and maliciously burn a building known as the Home Oil Station, the property of himself" contrary to section 12991.2, Code of 1939. Trial to a jury resulted in conviction and this appeal.

I. In passing upon the errors assigned we will first consider the one directed to the sufficiency of the evidence relied upon by the State to justify the submission of the case to the jury. Appellant had purchased the buildings and equipment on leased ground in 1930, and continuously operated the automobile service station thereon till the fire on March 23, 1940, at 3:45 a. m. Soon after he purchased the service station he transferred it to an employee, L. J. Davis, in whose name it remained until about two months before the fire. Davis gave appellant a mortgage on the property for which there was no consideration. The purpose of this transfer was to "get out from under" a contract which appellant regarded as unfair. However, appellant testified Davis was the owner of the property during the time he held title and that Davis hired appellant as manager and paid him $25 weekly salary and all the profits while Davis received $25 weekly salary.

The property appears to have been kept insured in appellant's name and, at the time of the fire, there were two policies thereon, payable to appellant, aggregating $11,800. Witnesses for the State testified this was in excess of its value, and that in 1937 appellant offered it for sale for $7,500. Appellant admitted that the profits of the business had been going down for the past few months and had not been good. There was evidence he was having difficulty meeting some of his financial obligations. The grease-rack room was not high enough to permit greasing large trucks therein. The stock of gasoline was low and Eddie Palmer, an employee of appellant, had loaded into a small truck much of the merchandise kept at the station, consisting of tires, tubes, cans

of oil, supplies, etc., and some of the tools, and at about 3 a. m. had hauled the same to appellant's warehouse. One box of tubes apparently was lost in the street during the trip and the other merchandise appears to have been piled in a corner of the warehouse, while some of the tools were found by the police at about 5 a. m. under the warehouse floor in which there was a broken place. Among other things found in the warehouse was a tire and wheel which had been left with appellant by a customer the evening before for repair and which had not been repaired. Appellant had previously instructed Palmer to remove the merchandise to the warehouse.

The fire started at 3:45 a. m. with an explosion in the grease-rack room, at the north end of the building. It did not start in the pumps or tanks. The office was in another part of the building. Paul Jones, a trucker, and Dave Johnson, an unemployed man, were sleeping on the floor in the office at the time. Johnson had gone to sleep in the grease-rack room, and about 1 a. m. defendant awakened him, gave him a drink of liquor and told him to go into the office and sleep. A motorist who attempted to secure storage in the station for his automobile about 1 or 1:30 a. m. was unable to do so.

When the fire started appellant was the only person at the station except the two men sleeping in the office. A few seconds later a witness saw a man with a bucket in his hand getting up from the driveway. It is the State's theory that appellant used a five-gallon bucket afterwards found in the driveway to carry gasoline with which he caused the explosion and fire. Appellant received a burn on one leg below the knee. The defense contends Palmer had accidentally spilled gasoline in the grease-rack room about one hour before the fire, and that the explosion and fire resulted from its accidental ignition.

Appellant gave varying accounts of the occurrences. The morning after the fire he made a written statement in which he said that when the crash came Palmer was driving into the driveway after returning a tire which he had just repaired and taken out; that appellant was walking north alongside the station; that his first thought concerned a jug of whiskey in the washroom and that he ran out there and got that. At the trial he testified

he was out on the parking looking for Palmer (who had not returned from hauling the goods to the warehouse) when the explosion came; that he was blown into the middle of the street; that he started into the office to rouse the sleeping men and met one of them coming out; that he seized a couple of fire extinguishers and ran up the drive to the grease-rack room, saw that would do no good, got into his car and started to a telephone. He testified he did not see Palmer after the fire started. He drove to the Maple Inn just around the corner and heard the fire truck, but it was apparently about 15 minutes before he arrived at the Maple Inn. He waited there a few minutes, then called a doctor to treat the burn on his leg. While waiting for the doctor he drove home and took some empty egg cases out of his car; returned to the doctor's office, then remained home until about 7 a. m. The two men who had been sleeping in the station departed with employee Palmer immediately upon his return from the warehouse, went to Palmer's home and remained there. Neither appellant nor any of the others were in the vicinity when the police arrived two or three minutes after the explosion, or at any time thereafter while the building was burning. The grease-rack room at the north end of the building and the stock room immediately south of it were destroyed before the fire was extinguished.

The foregoing statement omits many details in the record. There was also conflicting evidence. We are satisfied that the evidence, as a whole, was sufficient to sustain the verdict and that the court did not err in overruling the motion to direct.

■ II. Appellant's first assignment of error is that the court permitted the ownership of the building to be proved by parol evidence, over objections that the same was secondary evidence. The complaint concerns testimony of Mr. Krapfel that he (Krapfel) owned the land, which appellant rented from him and occupied under a written lease introduced in evidence, and that appellant owned the building and had so advised Krapfel.

Appellant contends the State was required to prove the ownership of the land by record title, or written instruments. With this contention we do not agree. The title to the land was not here directly involved though evidence of Krapfel's

ownership of the land and the lease to appellant was relevant as throwing light upon whether the building was the property of appellant. That was the issue to which the evidence was directed.

Code section 13732.11 provides that an allegation in an indictment of ownership of property is supported by proof of possession or right of possession of such property.

Prior to the enactment of this statute, in 1929, the rule appears to have been substantially the same. State v. McCray, 189 Iowa 1239, 179 N. W. 627; State v. Archibald, 208 Iowa 1139, 226 N. W. 186. Obviously, written or record proof of title to the land or ownership of the building was not here required.

But had the rulings admitting this evidence been incorrect the error would not have been prejudicial. Appellant himself later testified, ''I was the owner of the building of the Home Oil Station on March 23, 1940.'' That he did own, possess and operate this station was shown by his own testimony. There was no contention, evidence or intimation to the contrary.

III. Connected with the foregoing is the contention that instructions Nos. 3 and 12 were erroneous in failing to advise the jury that one of the material allegations of the indictment and one of the elements which the State was required to prove beyond a reasonable doubt was that the Home Oil Station was the property of appellant. The State argues this was sufficiently covered elsewhere in the instructions. This justification for the omissions need not be here considered because in omitting this element the instructions given by the court accorded with instructions requested by appellant. Therefore, he may not complain of the omission.

Furthermore, before the evidence was concluded, appellant's ownership had ceased to be a real issue. It was established without controversy by the testimony of appellant and was not disputed by other evidence which touched that point. Under such circumstances the failure to include this element in the instructions would not constitute reversible error. State v.

1216

Chumley, 229 Iowa 579, 294 N. W. 764; State v. Evans, 229 Iowa 932, 295 N. W. 433.

 IV. Eddie Palmer, an employee of appellant, who had testified before the grand jury on the indictment was a witness for the State. Upon direct examination by the State he testified that, under instructions from appellant, he loaded certain tires, tubes, supplies, tools, etc., in a truck and took them from the oil station to appellant's warehouse at about 3 a. m. approximately 40 minutes before the fire.

Apparently his testimony at the trial differed from that before the grand jury. Asked if he had not testified before the grand jury that 35 or 40 tubes instead of 25 or 30 were taken to the warehouse he said he had so testified. Then he was asked several questions — Now to refresh your recollection, do you "remember of testifying before the Grand Jury, that you took 19 cans of Quaker State Oil * * * that you took 3 one Gallon cans of Prestone * * * that you took a box of tire boots * * * ?"

In cross and re-direct examination the witness testified appellant had told him to take the merchandise to the warehouse several days before and not that night and that appellant did not help load it. To refresh his recollection, he was asked if he had not testified before the grand jury that, when he was cleaning up, appellant told him to get the stuff out of there—helped load it—said there was going to be a fire.

Objection to each question as an attempt by the State to cross-examine and to impeach its own witness was overruled. The answers to the questions were, in substance, that he did not remember, or that the statements before the grand jury were incorrect, and made under pressure. The State did not offer proof of the former testimony before the grand jury.

At a later stage of the trial Palmer was a principal witness for appellant. He then testified he had spilled about two or three gallons of gasoline on the floor of the oil station while cleaning the air compressor about an hour before the fire, that he wiped up some of it and that he didn't think appellant knew about it. Upon cross-examination by the State, he admitted having testified before the grand jury that he spilled one or one and one-half gallons of gasoline, that he wiped up most of it, that appellant

then came in and the witness told him he was cleaning the room. He also admitted changes in several other parts of his testimony. However, appellant's complaint is limited to the questions asked while Palmer was a witness for the State.

Throughout his examination by the State as its witness he appeared evasive and hostile and the changes apparently made in his testimony surprised the prosecuting attorneys. Under such circumstances an attorney may call the attention of his witness to his earlier testimony, not for the purpose of laying the foundation for impeachment but to refresh the recollection and quicken the conscience of the witness, to give him an opportunity to correct his testimony, if it is erroneous, and to show that it has surprised the party who called him. State v. Neville, 228 Iowa 1225, 293 N. W. 560; Hall v. Chicago, R. I. & P. Ry. Co., 84 Iowa 311, 316, 51 N. W. 150, 151; Doran v. Railway Co., 170 Iowa 614, 637, 153 N. W. 225, 232; State v. Walker, 133 Iowa 489, 495, 496, 110 N. W. 925, 927, 928; State v. Cummins, 76 Iowa 133, 40 N. W. 124.

The scope and extent of such questioning rests largely within the judicial discretion of the trial court. No abuse of discretion appears. We conclude the rulings were not erroneous.

■ V. Appellant assigns as error the giving of a general instruction relative to the impeachment of witnesses, contending it had reference to the witness Palmer, as a witness for the State. The questions asked the witness upon direct examination by the State were not for the purpose of impeachment. Hall v. Chicago, R. I. & P. Ry. Co., supra; Doran v. Railway Co., supra. Nor was there an attempt to impeach him by offering to prove his former testimony before the grand jury, or in any other manner.

■ VI. A witness for appellant testified concerning the value of the building and equipment. He based his estimate upon certain written data then in his possession in the courtroom. During his cross-examination the State requested and the court required the production of this written data, which, over objections by appellant, was identified and offered in evidence as part of said cross-examination.

Appellant's principal complaint is that the exhibit was admitted at the wrong time, to wit, during appellant's case in chief. The contention is that the statutory provisions regulating the order of trial forbid the introduction of exhibits by a party during the cross-examination of witnesses for the opposition. This contention is without merit. It is proper and customary to introduce such exhibits at the time of and as a part of the cross-examination of the witness whose testimony renders them admissible. Riordan v. Guggerty, 74 Iowa 688, 692, 39 N. W. 107; Barre v. Council Bluffs Ins. Co., 76 Iowa 609, 612, 41 N. W. 373, 374; McKivitt v. Cone, 30 Iowa 455; State v. Peirce, 178 Iowa 417, 449, 159 N. W. 1050, 1062; Note in 125 A. L. R., page 192 et seq.

VII. Appellant complains of a ruling excluding certain evidence which was immediately thereafter introduced without objection. It is sufficient answer to say that the subsequent admission of the evidence rendered the error, if any, nonprejudicial.

VIII. Nor was it error to refuse an instruction that it is a matter of common knowledge that frequent accidental explosions ofttimes occur around oil stations or where gasoline is kept and sold. The requested instruction was improper in form and had no proper basis of support. The subject matter was covered, so far as proper, by the customary instruction concerning the presumption that a fire is accidental.

IX. Appellant assigns as error the sustaining of objections to certain questions asked a witness upon direct examination. The record does not indicate what the answers to the questions would have been. Therefore, no prejudicial error appears. Campfield v. Rutt, 211 Iowa 1077, 1080, 235 N. W. 59, 60; Mitchell v. Auto Underwriters, 225 Iowa 906, 914, 281 N. W. 832, 837.

X. After the fire one Jackson, a former employee of appellant, together with appellant and two other persons, made an inventory of the burned personal property. This inventory was identified by Jackson and admitted in evidence. Upon cross-examination it appeared that none of it was made from Jackson's independent recollection but apparently from what

the others had told him. Thereupon the exhibit was stricken. No error appears here. The inventory was not a book of account as defined by the statute and was based upon hearsay, oral or written statements of appellant and others.

XI. On rebuttal, Bert Archibald testified for the State that a few seconds after the explosion he saw a man with a bucket in his hand getting up in the drive of the Home Oil Company between the sidewalk and the pavement. He was unable to identify the man. However, appellant had previously testified he was outside the station at the time of the explosion, was blown into the street and got up and went into the station. Other witnesses saw him in the drive shortly after the fire started.

We think the evidence concerning appellant's presence at the time and near the spot in question sufficiently supported the testimony of Archibald to justify the court's ruling denying the motion to strike Archibald's testimony.

XII. It is contended the instruction given relative to evidence of good reputation was erroneous in that it omitted a material element requested by appellant. The instruction in part stated:

"It is a circumstance which should be considered * * * in connection with all the other evidence * * * as tending to show that a person of such reputation would not be likely to commit the crime charged; and it may be sufficient to turn the scale in his favor."

The complaint is that the court refused to insert the following requested clause immediately after the foregoing quotation, "even though without such proof of good character you would convict". Both sides cite State v. Ferguson, 222 Iowa 1148, 1156, 270 N. W. 874, 879.

We do not think this complaint is well founded. The instruction states that such evidence may be sufficient to turn the scale in his favor. The refused clause in effect appears to be merely the antithesis of that statement. It adds no element to the thought previously expressed in the affirmative.

XIII. Appellant requested instructions that where, as in this case, the State relies wholly upon circumstantial evi-

dence, each necessary fact in the chain of circumstances must be established beyond a reasonable doubt and all must be connected with each other and the main fact or facts, etc. This is a so-called stock instruction set out at length in some of the cases cited herein, and was substantially given. In addition appellant requested the court to instruct, ''each and every circumstance essential to the conclusion of defendant's guilt should be fully established in the same manner and to the same extent as if the whole issue rested upon it.'' This was refused. The instruction given, after stating it was unnecessary to prove beyond a reasonable doubt each (minor) circumstance offered in evidence as tending to establish essential facts, continued:

'' * * * nor is it necessary that each essential fact, standing isolated and alone, be so proven, or that it be so established by independent evidence. It is sufficient if the material and essential facts, when given their respective places in the sequence of events, strengthen and support each other to such an extent that upon a consideration of the whole case the jury is convinced beyond a reasonable doubt of each fact and circumstance essential to conviction, and of the commission of the crime, and the defendant's guilt thereof.''

The error here assigned concerns the refusal to give the additional instruction requested by appellant and the giving of the portion of the instruction just quoted. In State v. Ferguson, 222 Iowa 1148, 270 N. W. 874, and State v. De Koning, 223 Iowa 951, 274 N. W. 25, relied upon by appellant, the defendant requested and the court refused to give either the so-called stock instruction given in substance in the case at bar or the additional instruction refused in the case at bar. The form of the instructions given in the cited cases is not shown, but they were not disapproved, both cases having turned upon the proposition that the evidence relied upon was not entirely circumstantial. State v. Clark, 145 Iowa 731, 122 N. W. 957, was reversed for failure to give the so-called stock instruction substantially given in this case. And in State v. Brazzell, 168 Iowa 480, 491, 150 N. W. 683, 687, failure to instruct the jury that the evidence was entirely circumstantial and to give an instruction somewhat

similar to the so-called stock instruction was held error. In State v. Blydenburg, 135 Iowa 264, 278, 112 N. W. 634, 640, 14 Ann. Cas. 443, the so-called stock instruction and the additional requested instruction were said to state the law with substantial correctness.

Excepting the Blydenburg case none of the cited cases discusses the proposition at bar. In the case at bar the court, after stating the State relied upon circumstantial evidence alone and defining it, gave the so-called stock instruction and also gave other additional instructions in lieu of the additional requested instruction. The question here turns upon the propriety of refusing the additional instruction requested by appellant and giving the additional instruction prepared by the court and quoted above. In State v. Wilson, 166 Iowa 309, 325, 144 N. W. 47, 53, the court disapproved the form of this refused instruction, saying:

"Instruction No. 9, refused, was inaccurate in exacting that 'each circumstance essential to the conclusion of defendant's guilt should be fully established in the same manner and to the same extent as if the whole issue rested upon it.' The thought seems to have been to exact proof of each circumstance beyond a reasonable doubt when considered independent of and apart from all other circumstances. Such is not the law, as has been repeatedly decided by this court. A fact or a circumstance, though it is not fully established when considered alone, may derive such support from the connecting circumstances that it may be considered proven beyond a reasonable doubt. State v. Cohen, 108 Iowa, 208."

The foregoing holding in the Wilson case in effect overrules the statement in the Blydenburg case that such an instruction (No. 9 in the Wilson case) was correct. That exact proposition has not been considered in any subsequent case called to our attention. Perhaps it should be noted that the so-called stock instruction on circumstantial evidence in the Blydenburg case was not considered in the Wilson case and has since been repeatedly approved. The additional instruction given states the rule enun-

ciated in the Wilson case. It was not erroneous in the particulars asserted by appellant.

XIV. Appellant complains that the instruction on reasonable doubt did not include a reasonable doubt arising from *lack of evidence*. It is sufficient answer to say it was so included (literally) in the paragraph defining the term. Having so defined reasonable doubt, it was unnecessary that the court repeat the definition or part thereof when using that term at other places in the instructions. State v. Harrington, 220 Iowa 1116, 1123, 264 N. W. 24, 28.

XV. One ground of the motion for new trial was misconduct of the jury, it being alleged that during the deliberations one juror made derogatory remarks concerning appellant and the Home Oil Station, and the characters of those who habitually resorted there. This was supported by the affidavits of two jurors but was controverted by affidavits of nearly all the others. In this state of the record we cannot say that the trial court erred in not accepting the statements of the two jurors as against the contrary statements of most of the other members. No abuse of judicial discretion is here shown. State v. Reynolds, 201 Iowa 10, 13, 206 N. W. 635, 636; State v. Umphalbaugh, 209 Iowa 561, 564, 228 N. W. 266, 267.

XVI. One of the jurors, a service station operator, remarked, during their deliberations, that an accidental fire had occurred in his station from gasoline dripping upon the hot exhaust pipe of a truck, stating there was no connection between that fire and the fire under consideration in the case. We are unable to agree with appellant that this remark was necessarily prejudicial. The case involved the explosion and burning of gasoline. It is a matter of common knowledge that gasoline dropped upon hot metal may ignite or explode. The refusal of the court to grant a new trial on account of the remark of a juror involving this commonly known characteristic of gasoline did not constitute an abuse of discretion. Keller v. Dodds, 224 Iowa 935, 943, 277 N. W. 467, 472.

XVII. Two bailiffs, a man and a woman, had charge of the jury during its deliberations. While the jury was returning from a meal at a restaurant the man bailiff stepped into a store

to buy tobacco and later with two men jurors went into a drug store where medicines and cigars were purchased. During these brief absences the other jurors waited on the sidewalk. The women jurors, with the woman bailiff, temporarily separated from the others. All the jurors made affidavits that during this time none of them had communication with any outside person and that the case was not discussed by the jurors. In view of this affirmative showing, the failure of the bailiffs to fully observe their duties does not appear to have resulted in prejudice. Therefore, the overruling of this ground of the motion for new trial was not error. State v. Towne, 180 Iowa 339, 350, 160 N. W. 10, 14; State v. Siegel, 221 Iowa 429, 434, 264 N. W. 613, 616; State v. Wright, 98 Iowa 702, 68 N. W. 440.

Other matters suggested by appellant need not be discussed in detail. No reversible error appears.—Affirmed.

HALE, C. J., and MILLER, SAGER, STIGER, GARFIELD, BLISS, and MITCHELL, JJ., concur.

WENNERSTRUM, J., takes no part.