STATE OF IOWA v. JOHN WALKER, Appellant.

**Criminal law:** FORMER JEOPARDY: RETRIAL: INDICTMENT: STATE-
1 MENT OF ISSUE. While a conviction for manslaughter amounts to an acquittal of a higher degree of crime, yet a retrial after a reversal, is upon the same indictment and it is proper for the county attorney to read the same to the jury, although it charges murder; and to state that accused is to be tried for manslaughter, to which charge he has pleaded not guilty, and that such is the issue then to be tried.

**Opening statement of county attorney.** It was not improper for
2 the county attorney, in making a statement of the evidence, to express the opinion that it would sustain a conviction for murder in the first degree as charged in the indictment, al-though as the result of a former trial defendant could only be convicted of manslaughter, of which fact he advised the jury in the same connection.

**Murder:** EVIDENCE: ADMISSIBILITY. Where the evidence tended to
3 show that deceased was killed by blows on the head inflicted with a club of some sort; that soon after the murder a single-tree with blood upon it was found near the body; that the same was taken from the wagon of a third person kept near by and that shortly prior to the murder defendant was seen coming from the location of the wagon to the scene of the

crime with something resembling a singletree, it was competent to show the ownership of the singletree and the place from which it was taken, after the same had been introduced in evidence without objection, for the purpose of showing the connection of defendant with the assault and the instrument used.

**Same:** IDENTIFICATION OF DEFENDANT. The testimony of a witness that he saw a person standing near the scene of the murder a short time prior to the assault, though unable to identify defendant as the person, was properly retained in the record where it was otherwise shown that defendant was in fact the person so seen by the witness.

**Examination of witnesses:** LEADING QUESTIONS. Where it clearly appears that a witness called by the State is hostile and persistently refuses to answer, it is proper to ask leading questions and to give the State every legitimate opportunity for refreshing his recollection.

**Impeaching evidence:** WITHDRAWAL: HARMLESS ERROR. An error in permitting the State to call a witness to impeach the character of one of defendant's impeaching witnesses is cured by withdrawing the testimony of the State's witness.

**Examination of hostile witness.** The examination of a hostile witness for the State by referring to a sworn statement previously made, which is identified as an exhibit and passed to the court for examination to show the good faith of the county attorney, is permissible though the exhibit is not offered in evidence.

**Manslaughter.** The killing of another as the result of an assault unaccompanied by the intent to kill is manslaughter.

**Instruction as to circumstantial evidence.** An instruction that a crime may be established by circumstantial as well as by direct evidence is not objectional as drawing an improper distinction between the two classes of evidence.

**Instruction as to defendant's evidence.** An instruction that the jury should not receive blindly the evidence of accused as true, but should consider whether it is in fact true, as made in good faith, or only for the purpose of avoiding conviction, is not erroneous.

**Instruction:** FAILURE TO SHOW MOTIVE FOR CRIME. A defendant cannot complain of an instruction that if the evidence fails to show a motive for the crime such fact should be considered in connection with all the other evidence as a circumstance in favor of his innocence.

**Instruction:** INCLUDED OFFENSES. Where a defendant is guilty of manslaughter, if guilty of any crime, failure to instruct in a

lower degree of crime included in the indictment is not erroneous.

**New trial:** MISCONDUCT OF COUNTY ATTORNEY. Where there was no showing that a county attorney permitted or procured a newspaper publication of evidence during the trial, or that the same was seen by or came to the knowledge of any member of the jury until counsel for accused called the attention of the court and jury thereto in the subsequent progress of the trial, refusal to grant a new trial because of alleged misconduct on the part of the county attorney in permitting its publication was not erroneous.

**Manslaughter:** EVIDENCE. Evidence, though circumstantial, is reviewed and held sufficient to justify a conviction for manslaughter.

*Appeal from Polk District Court.*— HON. A. H. McVEY, Judge.

TUESDAY, MARCH 5, 1907.

THE defendant was indicted jointly with one Harris Levich for the crime of murder in the first degree, and, on trial by a jury, he was convicted of manslaughter in February, 1903. The case was appealed to this court, where it was reversed, the opinion on said appeal being reported in 124 Iowa, 414. On a retrial of the case he was again convicted of manslaughter and sentenced to the penitentiary. He appeals.— *Affirmed.*

*McHenry, Mulvaney & Jones* and *McKenzie & Franklin,* for appellant.

*H. W. Byers,* Attorney-General, and *Chas. W. Lyon,* Assistant Attorney-General, for the State.

SHERWIN, J.— The appellant assigns some twenty-five errors on which he asks a reversal of this judgment. It is manifest that the proper limits of the opinion will preclude an extended discussion of each of the errors assigned, and we shall, therefore, direct our attention principally to the ques-

tions of grave moment which are presented by the appeal. As we have seen, the indictment was a joint one charging the defendants named therein with murder in the first degree. The defendant having been previously tried on the same indictment and found guilty only of manslaughter, he was acquitted of the graver charge.

Upon the present trial the county attorney read the indictment to the jury, and, after reading the same, he stated that the " defendant is only on trial for the offense of man-

1. CRIMINAL LAW: former jeopardy: retrial: indictment; statement of issue.

slaughter, an included offense in the crime of murder in the first degree." The county attorney, in the same connection, further said to the jury that the defendant plead not guilty, and that the plea put in issue the question as to whether or not he was guilty of manslaughter.

The appellant urges that the county attorney should not have been permitted to read the indictment to the jury, and bases his claim upon the proposition that, where the defendant is acquitted of a higher offense by conviction of a lower included offense, the graver charge is entirely eliminated from the proceedings. While it is true that a defendant, who has been tried on an indictment charging murder in the first degree and convicted of manslaughter only, cannot be again tried for the graver offense, it is also true that the indictment upon which the second trial is had is, and must be, the same as that on which he was first tried, and that it is entirely proper and in fact it is a requirement of the statute (Code, section 5372) that the indictment upon which the defendant is tried shall be read to the jury and his plea thereto stated to the jury. The indictment charging murder in the first degree, and the former acquittal of the defendant of that crime, necessarily called for a statement on the part of the court or of the county attorney that, while the indictment charged the graver crime, the defendant could only be tried on the included offense of manslaughter; and there was no error in permitting the county

attorney to read the indictment to the jury, or in the state-ments made by him to which we have already referred.

In another part of his opening statement, the county attorney said to the jury that, in his judgment, the evidence would show that the defendant was guilty of murder in the 2. OPENING STATE- first degree, and this the appellant complains MENT OF COUN-TY ATTORNEY. of. The statute provides that the county attorney may briefly state the evidence by which he expects to sustain the indictment, and we see no impropriety in his stating in that connection and, in connection with the fact that the defendant could only be convicted of manslaughter, his opinion that the evidence will sustain the graver charge.

The evidence tends to show that Isaac Finkelstein, the murdered man, was killed by blows on the head, inflicted by a club of some kind, and, very soon after his body was found, 3. MURDER: evi- a singletree was found near his body with dence: ad-missibility. blood on one end thereof, and there was also evidence tending to show that this singletree had been taken from a wagon belonging to Harris Levich, which wagon was kept on Levich's premises a block or so distant from the scene of the homicide. The evidence also tends to show that very shortly prior to the murder, the defendant was seen coming from the direction where this wagon was kept, and going toward the scene of the crime with something in his hand bearing the general appearance of the singletree which was introduced in the evidence. The defendant made no objection to the introduction in evidence of the singletree, and the State was then permitted to prove that it was the property of Harris Levich. There was no error in the ruling; it was entirely competent to show the ownership thereof, and the place from which it was taken, for the purpose of showing the connection of the defendant with the assault upon Finkelstein and the instrument with which he was struck.

One Edward Abraham was called by the State for the purpose of showing that the defendant was near Levich's

place of business during the early evening preceding the
murder. He testified that he saw a colored man standing outside of a certain cigar store

4. SAME: iden-
tification of de-
fendant.

between Fourth and Fifth streets, on the north side of East Walnut, during the evening that Finkelstein was killed, but he was unable to identify the defendant as that man. The defendant thereupon moved to exclude his testimony, and the county attorney assented thereto on condition that he failed to identify the defendant as the man by other testimony. The defendant was, in fact, fully identified as the man whom Abraham had seen at that particular time and place, and there was no error in the ruling refusing to strike the testimony.

One Nellie Wells was called to the witness stand by the State and interrogated as to admissions alleged to have been made to her by the defendant both before and after the murder of Finkelstein. There was evidence tending to show that she was the paramour of the defendant, and she resolutely

5. EXAMINATION
OF WITNESSES:
leading ques-
tions.

and consistently refused to answer any and all of the questions propounded to her by the State which were in any way material to the question under consideration. The witness was, in the fullest sense of the word, hostile to the State, although she had theretofore made a sworn statement covering the matters upon which the State sought to elicit testimony. Practically every question put to her by the State was objected to by the defendant, and it must have been apparent to the court that the defendant was offering every obstacle to the introduction of any testimony from this witness. Under such circumstances it was competent and proper for the trial court to permit leading questions, and to give the State every legitimate opportunity for refreshing the recollection of the witness, and for securing from her this important testimony. It is well settled in this State, and in most of the other jurisdictions, that leading and suggestive questions may be asked of a hostile or unfriendly

witness, and that this rule does not infringe upon the other general rule that a party may not impeach his own witness, and the rule has been extended so far as to permit asking a hostile or unwilling witness if he has not at some other time and place made statements inconsistent with his present testimony. *Humble v. Shoemaker,* 70 Iowa, 223; *State v. Cummins,* 76 Iowa, 133; *Spaulding v. C., St. P. & K. C. Ry. Co.,* 98 Iowa, 205.

While the appellant in his original argument apparently urges the incompetency of the examination of this witness, in his reply, he shifts his ground and states that his complaint is that there was an attempt on the part of some one to coach the witness. If any such attempt was made, it did not appear when the witness was on the stand unless it be said that she had been coached in the interests of the defendant. As we have heretofore shown, she refused absolutely to answer any material question put to her by the State, and this refusal was made on the ground, as she herself stated, that she did not want to answer, and in the face of an order of the trial court committing her for contempt in not answering. There is nothing in the appellant's contention on this branch of the case. There is no showing in the record that the county attorney exceeded the due bounds in his attempt to draw from this witness testimony to which the State was clearly entitled in the presentation of its case.

There was testimony tending to impeach some of the State's witnesses and most of the defendant's witnesses. The court permitted the State to call a witness to impeach the character of one of the defendant's impeaching witnesses, and this is assigned as error. This testimony, however, was withdrawn from the consideration of the jury by an instruction, and we need not determine whether it was properly received or not. We may say, however, that such testimony is held competent by many courts, and that, so far as we are ad-

6. IMPEACHING EVIDENCE: withdrawal: harmless error.

vised, this court has never held otherwise. See *State v. Moore*, 25 Iowa, 128.

As we have seen, the witness Nellie Wells had made an affidavit regarding certain admissions made to her by the defendant, and, during her attempted examination as a

7. EXAMINATION OF HOSTILE WITNESS. witness by the county attorney, he evidently held in his hand this written instrument, and, during the progress of the proceedings, he had it identified as " Exhibit B." It was not offered in evidence, but it was handed to the judge presiding at the trial for his inspection to show good faith on the part of the prosecution in the examination of the witness. There was no error in this proceeding.

In its sixth instruction, the trial court told the jury that if it found that the defendant struck the blow that killed Finkelstein, and that the defendant only intended to make

8. MANSLAUGHTER. " an assault and battery upon the person of said Finkelstein, or to inflict a great bodily injury upon his person, . . . but that, as a result of said assault, said Finkelstein did die without the defendant having intended to kill him," then the defendant would be guilty of manslaughter. The appellant says that this instruction is not abstractly correct; that it stated the law too strongly " in the direction of authorizing the conviction of the defendant for manslaughter." The appellant cites no authority in support of his contention, and indeed we think it would be very difficult for him to do so. In *State v. Abarr*, 39 Iowa, 185, this court defined manslaughter as the killing of another without malice, either expressed or implied, " either unlawfully, upon a sudden quarrel, or unintentionally, while the slayer is in the unlawful commission of some act not amounting to a felony." This definition has repeatedly been approved by this court, and the instruction complained of is in harmony therewith.

The seventh instruction is complained of. The court therein told the jury that a criminal charge might be estab-

lished by circumstantial evidence as well as by direct and positive proof, and the appellant says that the instruction makes an improper distinction between direct and circumstantial evidence.

9. INSTRUCTION AS TO CIRCUM-STANTIAL EVI-DENCE.

There is no merit in the complaint; practically the same instruction has been many times approved by this court.

In its ninth instruction, the court called the attention of the jury to the fact that the defendant had been a witness in his own behalf, and said that he was a competent witness, and that his testimony was to be considered " by the same rules by which you consider the evidence of every other witness," and he further told the jury that, in considering the defendant's testimony, it should take into consideration the circumstances under which the testimony was given, his interest in the event of the suit, and all other circumstances " in determining what weight you will give to his testimony," and he further said, and this is the part of the instruction complained of, " You are not required to receive blindly the testimony of such accused persons as true, but you are to consider whether it is true, as made in good faith or only for the purpose of avoiding conviction." The instruction announced a rule which has heretofore received the sanction of this court, and it was not erroneous. *State v. Mecum,* 95 Iowa, 433; *State v. Hunter,* 118 Iowa, 686.

10. INSTRUCTION AS TO DEFEND-ANT'S EVIDENCE.

The tenth instruction is also complained of. It states, in substance, that, when the evidence fails to show any motive for the commission of the crime charged, it is a circumstance in favor of the defendant's innocence, and that it should be so considered by the jury in connection with all the other evidence in the case. The appellant cannot justly complain of the instruction. It states the rule as favorably to him as he had a right to ask.

11. INSTRUCTION: failure to show motive for crime.

The court did not instruct the jury on the question of an assault with intent to inflict a great bodily injury or

assault and battery, and this omission is complained of.
The record in the case clearly shows that,
12. INSTRUCTIONS: if the defendant is guilty of any crime, he
included
offenses.          is guilty at least of the crime of manslaughter.
We have repeatedly held that, in such cases, it is not error
to omit instructions covering a lower degree of crime in-
cluded in the indictment. *State v. Bone,* 114 Iowa, 537;
*State v. Cunningham,* 111 Iowa, 233; *State v. Van Tassel,*
103 Iowa, 6.

The appellant strenuously contends that the trial court
should have granted a new trial on account of the miscon-
duct of the prosecuting attorney as shown by the motion
13. NEW TRIAL: for a new trial. It appears from this rec-
misconduct of
county attor-  ord that, after the witness Nellie Wells had
ney.          first been called to testify and had refused
to do so, a reporter of the Register and Leader went to the
county attorney at his office during an adjournment of the
court and stated to him that his paper intended to publish
the proceedings of the day before and also the affidavit or
statement that had been made by said witness. He then
asked the county attorney to let him see the original affidavit
made by her. This was done and the paper published the
same in its issue of the next morning. There is no showing
that any member of the jury trying the case had seen or read
or knew anything about this publication until the attorney for
the appellant called their attention and the attention of the
court thereto in the subsequent progress of the trial. So far
as the record discloses, there is nothing to indicate any im-
proper conduct or motive on the part of the county attorney
in this transaction. If it were shown that he had taken
this means for the purpose of getting before the jury the
alleged admission made by the defendant, such conduct
would be highly reprehensible, but, as we have said, nothing
of the kind is shown, and, there being no showing of preju-
dice because of the newspaper publication, the case should
not be reversed on account thereof.

One of the appellant's most serious contentions is that the evidence is insufficient to sustain the verdict and judgment against the defendant. The case is one of great importance to the defendant, and it is just as important to the State that one of its citizens be not unjustly, and without sufficient evidence, punished for a crime which he may not have committed. With these thoughts in mind, we have given the record in this case very careful examination and consideration, and we have reached the conclusion that the verdict has such support in the evidence that we should not disturb it. It is true that no witness for the State saw the fatal blow struck, nor did any witnesses for the State see the defendant at the scene of the crime, but the evidence shows that, but a few minutes before Finkelstein's body was found, Finkelstein passed east along East Walnut street toward the alley where the crime was committed, and that, but a few minutes after he had passed the corner of Sixth and Walnut, the defendant crossed Sixth street from the northwest to the northeast corner of Sixth and Walnut, and went east along Walnut street toward the alley where Finkelstein was killed, with some instrument in his hand answering the description of the singletree that was taken from the Levich premises and that inflicted the fatal wound on the head of Finkelstein. There is also evidence tending to show that the defendant had been hanging around that immediate neighborhood from about seven o'clock in the evening, although his home was some distance away on the west side of the river. There was also evidence tending to show that, after the crime had been discovered, and after the defendant had returned to his boarding place, he was seen in Levich's company near such boarding place. Among other defenses the defendant attempted to prove an alibi, but the witnesses whom he called for that purpose were so thoroughly discredited by impeachment and otherwise that the jury was fully justified in giving such defense no consideration. And, if

*14. MAN-SLAUGHTER: evidence.*

the jury believed, as it evidently did, the testimony of the State's witnesses who saw the defendant on the evening in question and who testified as to his whereabouts and movements from about seven o'clock until within a very few moments of the time when the crime was committed, it was justified in finding that the defendant killed Finkelstein.

Other errors were assigned, but they are not of sufficient importance to demand specific consideration.

We find no error in the record for which there should be a reversal of the case, and, believing as we do that the verdict has sufficient support in the evidence, the judgment must be, and it is, *affirmed.*