STATE OF IOWA, Appellee, v. E. W. STUART, Appellant.

**EMBEZZLEMENT: Debtor and Creditor (?) or Principal and Agent (?)**
1  Record reviewed, and held to show that the business relation between the prosecuting witness and the defendant was that of principal and agent, and not that of creditor and debtor.

**EMBEZZLEMENT: Venue.** Venue, in a charge of embezzlement, is
2  properly laid in the county in which the defendant was under contract obligation to account to his principal.

**EMBEZZLEMENT: Demand for Accounting.** The obligation of an
3  agent to promptly account, without demand, to the principal for the proceeds of sales, embraces a like obligation as to sales in violation of the authorized terms, but accepted by the principal.

**CRIMINAL LAW: Instructions—Interest of Defendant.** The jury
4  may be told that they may consider the interest of one on trial in the outcome of the prosecution, in determining the weight and credibility of his testimony.

**CRIMINAL LAW: Gravity of Crime—Cautionary Instructions.** It is
5  not reversible error for the court to call the attention of the jury to the seriousness of the crime and the importance of conviction, if guilt be clearly proven, and to the equally serious duty of the jury to exercise great care in the consideration of the evidence.

*Appeal from Shelby District Court.*—EARL PETERS, Judge.

DECEMBER 21, 1920.

THE defendant was convicted of the crime of embezzlement, and sentenced to an indeterminate term in the reformatory, at Anamosa, and appeals. The necessary facts are referred to in the opinion.—*Affirmed*.

*Edward S. White,* for appellant.

*H. M. Havner,* Attorney General, *Ernest M. Miller,* County Attorney, and *Byers, Byers & Miller,* for appellee.

STEVENS, J.—I. The indictment is based upon Section 4842 of the Code of 1897, and charges the defendant with the embezzlement of $22, on or about the 23d day of November, 1918.

**1. EMBEZZLE-MENT: debtor and creditor (?) or principal and agent (?)** It is the claim of the State that the defendant, while acting as the agent of one J. S. Hamilton, received $35 from L. R. Marr, of Ainsworth, Iowa, for a hog feeder, which he sold him as the agent of Hamilton, and that, instead of remitting $22 thereof to Hamilton, as was his duty, he converted the same to his own use; that J. S. Hamilton resides at Harlan, Iowa, at which place he is engaged in the manufacture and sale of a feeder, known and sold to the public as a roller-bearing feeder for hogs; that, in the early fall of 1917, Hamilton met the defendant, and offered him employment as a salesman; that, at the time, the defendant was working for the Wrought Iron Range Company, and could not accept the offer. Later, Hamilton received a letter from defendant, dated at Bangor, Maine, stating that he was ready to accept employment; and, after some correspondence, satisfactory arrangements were made, and, some time in the spring of 1918, defendant began selling the hog feeders manufactured by Hamilton. The contract of employment was oral. Hamilton, by the terms thereof, however, required the defendant to sell the feeder for $36.50, $14 of which was allowed him as commission. Remittances of cash sales were to be made weekly, unless Hamilton should desire that they be made more frequently, in which case they were to be made as requested by him. If the sale was not for cash, shipment was made C. O. D., and Hamilton later paid the commission direct to Stuart. Hamilton furnished defendant with notebooks, order blanks, some advertising cards, and a Ford automobile. For the latter, he agreed to pay $1.50 per day. All expenses of defendant were paid by him, including the upkeep of the automobile. Hamilton directed the defendant where to work, and it appears that he canvassed territory in the vicinity of Kellogg, Grinnell, Oskaloosa, Perry, Carroll, and Clinton; and that, while he was at Oskaloosa, Hamilton was with him, part of the time. The order blank furnished the defendant was signed by the purchaser, and also by defendant as a witness, and was as follows:

"Original.                              Date, 8-30-18.
     Please forward by R. I. R. R.
To L. R. Marr,
At Ainsworth
Postoffice, Ainsworth, R. F. D. No.
The following goods F. O. B. Harlan, Iowa.
One feeder............$36.50
Terms by                    Total $
Witness, E. W. Stuart.

                          L. R. Marr.
                    (Signature of Purchaser.)

"No verbal conditions recognized. All stipulations must
be embodied herein. This order is not subject to countermand.
Retain this copy for future reference."

The above is the order for the sale in question. Remittances
were made by defendant to Hamilton from time to time in Sep-
tember, October, and November, 1918, and perhaps at other
times. The remittance usually included several sales; and one,
dated October 21st, amounted to $220.

It is not claimed by defendant that he remitted the $22 due
Hamilton on account of the sale to Marr. Defendant sold the
automobile for $250, which sum he retained; and, some time in
November or December, quit work, and did not further com-
municate with Hamilton until January 8, 1919, when he wrote
him a letter from Sterling, Illinois, admitting that he had done
wrong, inclosing a note for $500, and asking forgiveness and an
opportunity to resume work for him.

The principal defense urged upon the trial was that the
relation between Hamilton and defendant was that of debtor
and creditor, and not that of principal and agent; that, at most,
defendant was guilty of a breach of trust. The facts, however,
clearly show that the defendant was employed to sell the feeders
for Hamilton, and that he did not purchase and sell the same
upon his own account. Orders therefor were taken by defendant
and forwarded by him to Hamilton, who shipped the feeders
directly to the purchaser. The money remitted by the defendant
was collected by him from the purchaser, and the feeders were
shipped by Hamilton upon receipt thereof. Each of the orders

received was signed by the purchaser, and also by the defendant, but as a witness. The territory canvassed was set apart and designated by Hamilton, and defendant was at all times under his control and direction. He was not charged by Hamilton with the feeders sold by him, nor did he assume to direct Hamilton in the shipment or delivery thereof. He simply forwarded orders upon blanks furnished by Hamilton, and signed by the purchaser. It is true that defendant retained $14 of the proceeds of each sale for $36.50. In a few instances, the feeder was sold for $35, and this was admittedly contrary to the directions of Hamilton. Manifestly, Hamilton did not sell the feeder to the defendant, but delivered the same directly to the purchaser found by the defendant as agent for him.

The court submitted to the jury defendant's theory of the relationship between the parties, instructing it that, if it appeared from the evidence that it was that of debtor and creditor only, and not that of principal and agent, the defendant should be acquitted. The evidence abundantly sustains the finding of the jury, and clearly shows that the defendant was the agent of Hamilton. 1 Clark & Skyles on the Law of Agency, Section 8; *Walton v. Dore*, 113 Iowa 1; *Van Sandt v. Dows & Co.*, 63 Iowa 594; *Norton & Co. v. Melick*, 97 Iowa 564.

II. It is also urged by counsel for appellant that the venue was improperly laid in Shelby County. The evidence, however, discloses that defendant was required by the terms of his employment to make remittances and settlement

**2. EMBEZZLEMENT: venue.**   to Hamilton at Harlan. It is immaterial that Hamilton did not keep books, or charge the amount of each sale to defendant. The terms of his employment required settlement to be made at Harlan. Clearly, the district court of Shelby County had jurisdiction of the offense.

III. Exceptions were preserved to Paragraphs 10½, 12, and 13 of the court's charge. The complaint of Paragraph 10½ is that it is incomplete, and does not fully state the law upon the point covered thereby. No request for further

**3. EMBEZZLEMENT: demand for accounting.**   instructions was made. It is claimed that the court should have told the jury that, as the sale to Marr, which was for $35, instead of $36.50, as agreed, it was incumbent upon the State to prove a demand by Hamilton,

The sale was not, however, unauthorized. The order was accepted and approved by Hamilton, as were other orders for $35. Notice of acceptance and demand for the purchase price were not required.

The court, in the twelfth paragraph of its charge, instructed the jury that, in determining the weight and credibility of the defendant's testimony, it might take into consideration his in-

**4. CRIMINAL LAW: instructions: interest of defendant.**  terest in the result of the trial. Similar instructions have been too often approved by this court to require more than the citation of a few of them. *State v. Moelchen,* 53 Iowa 310; *State v. Sterrett,* 71 Iowa 386, 388; *State v. Mecum,* 95 Iowa 433; *State v. Young,* 104 Iowa 730, 734; *State v. Ryan,* 113 Iowa 536; *State v. Walker,* 133 Iowa 489; *State v. Steidley,* 135 Iowa 512.

The court, in Paragraph 13, called the jury's attention to the fact that the crime charged was a serious one, and to the importance of conviction where guilt is clearly shown, but also

**5. CRIMINAL LAW: gravity of crime: cautionary instructions.**  told the jury that the serious character thereof required that careful consideration should be given to the evidence to sustain it. The paragraph is in the nature of a cautionary instruction, and while possibly not as aptly phrased as it might have been, it is not erroneous, and a reversal cannot be granted on account thereof.

V. Numerous points touching the conduct of the case and the theory upon which it was submitted to the jury by the court are covered by assignment of error, and in argument by counsel for appellant. We have given careful consideration to all matters discussed, or that could have a material bearing upon the question whether defendant had a fair trial, but have already discussed all that we deem of sufficient merit to require consideration. The guilt of the defendant is, in our opinion, fully established, and, so far as disclosed by the record, he had a fair trial. As we find no reversible error in the record, the judgment of the court below is—*Affirmed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.