STATE OF IOWA, appellee, v. CHARLES SHILINSKY, appellant.

No. 49034.

(Reported in 81 N.W.2d 444)

MARCH 5, 1957.

Verne Lawyer and Robert D. Ray, both of Des Moines, for appellant.

Norman A. Erbe, Attorney General, Freeman H. Forrest, Assistant Attorney General, and Ray Hanrahan, County Attorney, for appellee.

THOMPSON, J.—The defendant's "propositions" (which we take to mean "errors") relied upon for reversal are three in number. As stated, they are first, that the court erred in denying his motion to set aside the verdict and grant a new trial; second,

that the court erred in giving Instruction No. 4; and third, that there was error in the action of the court in first sentencing defendant to a term in the county jail, and then recalling him two days later and sentencing him to an indeterminate period in the state penitentiary. We shall discuss these in order.

I. An understanding of the question raised by the first assignment requires a statement and discussion of the evidence. On February 7, 1956, Mrs. Vera Randall, a clerk employed in the store of the H. L. Green Company, located at 507 Walnut Street, in Des Moines, observed the defendant standing near the toy counter where she was at work. He spoke to her, asking her name and saying she was "a good-looking babe." She walked away. The defendant moved to another counter. Mrs. Randall was called to another counter near by. At the toy counter there was a cash drawer, equipped with a bell which rang when the drawer was opened. This drawer was not used in connection with the ordinary sales, but was a reserve depository for change which the clerks could resort to when needed. The drawer was under the counter.

Mrs. Randall testified that each morning $150 was put in the drawer, and that she had put in that amount on the morning of the day in question. She had just been to the office to get some more change and had procured $50 in one-dollar bills to be placed in the drawer. These bills were lying on the counter. The amount of money in the drawer stayed at $150, unless someone made a mistake, it being used only for making change for the surrounding counters. While Mrs. Randall was at the adjoining counter she heard the bell on the cash drawer ring, saw the defendant at the drawer and saw him grab a handful of bills. She saw him seize the bills she had just procured from the office. She screamed and ran after him. Mrs. Donna Haug, another clerk, heard the bell ring and saw the defendant at the cash drawer. She did not see him take the money, as he had his back to her. Ross Genovese, grocery manager in the store, saw the defendant open the drawer and take a handful of bills. He also pursued the defendant.

The hue and cry being thus raised, the next few moments were full of action. Both defendant's ability at sneak thievery

and his speed afoot seem to have been distinctly second rate. Mrs. Randall first caught up with him, but he broke away from her. Ross Genovese next seized him, but he slipped out of his coat and ran out of the store and down an alley. By this time Benny Genovese, a brother of Ross and likewise a store employee, had joined in the chase. It proceeded down the alley to Fifth Street, then along Fifth Street to Locust, and then west on Locust. A traffic officer, Robert Warren, who was on duty at Fifth and Locust, joined in the pursuit. Benny Genovese showed the most speed of all the runners. He shortly overhauled the defendant, throwing him to the sidewalk and holding him until the police officer arrived.

Robert Warren, the policeman, testifies that he took the defendant back to the store and with another officer searched him in the office. Seventy one-dollar bills were found on him. A piece of paper was put around the money. Three of the bills were marked by the officers and by the Geneveses; and both Ross and Benny Genovese and Officers Warren and Samuel Funaro, who also came to the store office, either signed their names or initials on the blue-and-brown paper band that was put around the entire package of seventy one-dollar bills taken from the defendant.

When this package was produced and identified at the trial, the paper band had been broken. Over objection, however, it was admitted in evidence. It is defendant's contention at this point that there was insufficient identification of the package, it should not have been admitted, and without it there was a lack of competent evidence to show that he was guilty of the crime charged.

We are unable to agree. While there was no explanation of the manner in which the identifying band was broken, we think the circumstance went to the weight of the evidence rather than to its admissibility. Seventy dollar bills were shown by the testimony of several witnesses to have been placed in the band at the time the defendant was searched; and seventy dollar bills were still there when the exhibit was offered in court. Three of these were exactly identified by names or initials placed upon them. It is true the other sixty-seven bills were not marked and

so no one could say definitely that they were the identical ones taken from the defendant, or from the store. But they were properly admitted in evidence. There is testimony that the defendant seized a "handful" of bills from the counter and the cash drawer; and seventy bills were found upon his person. They were placed in the paper band. The only reason for a claim that they may not have been the same ones placed in the band at the time of the search is the fact that the band was broken, how or by whom not being shown. The number of bills was the same. Why anyone would have a reason for removing the sixty-seven unmarked bills and substituting sixty-seven others is difficult to understand, and no motive therefor is suggested. Clearly, the question of identity was for the jury. The weight of the evidence rather than its competency is the matter to be decided under these circumstances.

Underhill's Criminal Evidence, Fourth Edition, section 510, at page 1034 says: "The question of the identity of the property received in evidence as the stolen money is for the jury." A similar problem was dealt with in Hooten v. State, 53 Tex. Cr. 6, 108 S.W. 651, 653.

We said in State v. Williams, 245 Iowa 494, 505, 62 N.W.2d 742, 748: "The trial court has considerable discretion in determining the admissibility of demonstrative evidence but great latitude is shown in admitting it and it is usually received if it affords a basis for a reasonable inference on a point in issue."

See also State v. Bales, 246 Iowa 446, 450, 451, 68 N.W.2d 95, and cases cited; and State v. Kindschuh, 248 Iowa 440, 80 N.W.2d 750.

We are clear that the trial court was well within its discretion in admitting the money in evidence. It is also apparent that, even if it had not been admitted, there would have been a jury question not only upon the question of larceny, but likewise as to the amount of the money taken. These were the essential matters in the case. Mrs. Randall testified that she saw the defendant seize the fifty one-dollar bills which she had just brought from the upstairs office. She said that she had placed $150 in the cash drawer in the morning, and that the amount would remain the same through the day, except for possible mistakes by the clerks in using the drawer to procure

change. We find, in the appellee's denial of and amendment to the abstract, testimony of Ross Genovese, who said that he checked with the floor lady "how much money was missing from the cash drawer, which was $71." The record shows no objection to this evidence.

It is our conclusion that the package of money was sufficiently identified, the weight to be attached to any questions of doubt being for the jury. Likewise, we are clear there was ample evidence both of the actual larceny from the building and of the value of the property stolen to require submission of those matters.

II. In Instruction No. 4 the trial court told the jury the elements which the State must prove beyond a reasonable doubt, but in so doing omitted to advise them that the larceny must have been committed "in the daytime." Error is predicated upon this omission. The time of commission, whether in the daytime or nighttime, is an essential part of the statute, says the defendant. He asserts that he was prejudiced by this omission, although how is not made clear. There was no dispute as to the time of the offense, if one was committed. The testimony is that it was about 4:50 to 5 p.m. The time was never a controverted issue, and we find no prejudice arose from the failure to state it in the governing instruction. The offense of larceny in the daytime was properly defined in Instruction No. 3; and under familiar rules the instructions are to be considered as a whole.

We have several times held that failure to include in the instructions an element which was not in dispute is not ground for reversal. State v. Billberg, 229 Iowa 1208, 1215, 1216, 296 N.W.396; State v. Chumley, 229 Iowa 579, 585, 586, 294 N.W. 764. It is pointed out in the Chumley case, as well as in State v. Roberts, 222 Iowa 117, 123, 268 N.W. 27, that we are required by section 793.18 of the Code (then section 14010) to examine the record without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands. No substantial right of the defendant was lost by the failure to refer to "in the daytime" in Instruction No. 4. There was no dispute on

this point, and, since a larceny must necessarily be committed either in the daytime or the nighttime, and the punishment provided for the latter offense is more severe, it is apparent the defendant was not prejudiced.

■ III. Finally, complaint is made that the court first sentenced the defendant on April 11, 1956, to a term in the county jail and to pay a fine; then recalled him two days later, on the 13th, and sentenced him to an indeterminate term in the Iowa State Penitentiary not to exceed five years, and to pay costs. In fact, the latter sentence is the only one shown by the clerk's transcript of the record. The State says, in argument, that the first sentence was an oral one only. If this is true, it was never a judgment of the court. Neither an oral sentence nor one merely noted on the court's calendar is a judgment of the court. Only the record in the official judgment docket is proof that a judgment has been entered, for the reason that there is no enforceable judgment until it has been so spread upon the record. Jones v. McClaughry, 169 Iowa 281, 293, 294, 151 N.W. 210, and cases cited; State v. Wieland, 217 Iowa 887, 897, 251 N.W. 757, 761; State v. Barlow, 242 Iowa 714, 719, 46 N.W.2d 725.

■ But a sentence of the kind pronounced against the defendant on April 11 would have had no validity and would not have prevented a later proper sentence, even though it had been properly recorded in the judgment docket. This is for the reason that it did not accord with the sentence provided by the Iowa statute for the offense of which the defendant was convicted. The trial court stated when the defendant was brought in for resentencing on April 13 that he had overlooked the fact that section 709.5, for violation of which defendant was convicted, does not provide for a jail term. The only punishment under this section when the conviction is for larceny in the daytime in any store (or other structure as set out in section 709.4) of property of the value of more than $20 is a sentence to the penitentiary for not to exceed five years.

The defendant urges that he had begun to serve the first sentence before the second one was imposed, and that the court had lost jurisdiction. This would not be true if no judgment of the court had been rendered, because the supposed sentence had

not been spread upon the official judgment record. Nor would it be correct for another vital reason apparent here. The first sentence was void at all times because not permitted by the statutes.

In United States v. Bozza, 3 Cir., N. J., 155 F.2d 592, 595, is this language: "However, it is well established that imposition of a sentence at variance with the statutory requirements is a 'void act'. Such a sentence may be superseded by a new sentence in conformity to the provisions of the statute. It is no hindrance that the correction—even when it entails a greater punishment—occurs after sentence has been partially served or after the term of court has expired."

Several authorities are cited immediately following this language. This holding was affirmed when the case reached the Supreme Court of the United States. See Bozza v. United States, 330 U. S. 160, 67 S. Ct. 645, 91 L. Ed. 818.

See also State v. Parks, 67 Ohio App. 96, 100, 101, 36 N.E.2d 42, 44, 45 ("If a trial court has imposed an illegal and void sentence, it has the power to substitute for it at a later time a legal sentence, notwithstanding the void sentence has been partly executed.") ; and Nelson v. Foley, 54 S. D. 382, 384, 223 N.W. 323, 324 ("Until a valid judgment was entered, the court did not exhaust its jurisdiction, and might be required to correct any irregularities by pronouncing a valid sentence and entering a valid judgment").

We have examined the entire record and find no error.—Affirmed.

All JUSTICES concur.