STATE OF IOWA, appellee, v. LARRY EUGENE FORD, appellant.

No. 52205.

746

OCTOBER 18, 1966.

Thomas A. Renda, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, Ray Fenton, County Attorney, and Charles F. Robinson, Assistant County Attorney, all of Des Moines, for appellee.

GARFIELD, C. J.—Defendant Ford was charged by county attorney's information, tried and found guilty of breaking and entering Arnie's Tap in Des Moines with intent to commit larceny in violation of section 708.8, Code, 1962. From judgment and sentence on the verdict defendant has appealed. This is the delayed appeal we allowed on November 16, 1965. Ford v. State, 258 Iowa 137, 143, 138 N.W.2d 116, 120.

Three errors are assigned: 1) Admission in evidence of Exhibits D, a hammer, E, a gun, both found by an officer under a pool table in Arnie's Tap, and F, $36.18 in coins of various denominations and a torn dollar bill, allegedly taken from coin machines in the tap and found on defendant's person, together with F-1, the envelope in which the officers placed the money. 2) Admitting testimony of a deputy county sheriff-jailer of

defendant's escape from jail and flight while awaiting trial. 3) Giving jury Instructions 8 regarding evidence of flight and 12 as to the weight to be given defendant's own testimony.

We find no reversible error and affirm the conviction.

There is ample evidence of the following: Des Moines police called Arnold Gibson to the tap owned by him about 5:45 a.m. on January 8, 1964. The place had been broken into shortly before then. Gouge marks were found on the door. The coin machines on the jukebox, pool table and shuffleboard were broken open and, it was stipulated, $37.18 was taken from the tap. Gibson testified the hammer and gun, Exhibits D and E, found by the police under the pool table, were not his.

Police Officers Weatherington and Belieu, while passing the tap, noticed some wood had been knocked away from the door. Belieu quickly searched the place while Weatherington called Lieutenant Teale. When Teale arrived he and Belieu found defendant hiding under the pool table with the hammer and gun near him. Defendant told the officers he broke into the building and coin machines. Thirty-six dollars and eighteen cents in coins of various denominations and a torn dollar bill, all identified as Exhibit F, were found in defendant's left front pocket, counted by the three officers, placed in the envelope, Exhibit F-1, and put in the property locker at the city jail.

The property clerk was the only other person with access to the locker. The three officers all testified Exhibit F-1 was in basically the same condition as when it was placed in the locker. Similar testimony was given by one or more officers as to Exhibits D and E, the hammer and gun. There is also testimony of Officers Belieu and Devine that defendant admitted the hammer was his but denied owning the gun. However, Officer Nehring testified defendant admitted owning both the hammer and gun.

Defendant's testimony is that as he was walking past the tap about 5 a.m. he saw a police car and the tavern door was open; Officer Belieu commanded him at gunpoint to come inside and stand there so the officers could charge him with robbery; he was standing by the pool table, not crouched under it, when Lieutenant Teale arrived; he denied knowledge of the hammer

748

and gun; denied the $37.18 was found on his person; denied he admitted to the police he broke into the tap or that the hammer was his.

Defendant testified he had twice previously been convicted of a felony, once for receiving and concealing stolen property, and was on parole on January 8, 1964.

Testimony as to defendant's escape from jail will be referred to later.

I. Abuse of discretion and error are claimed in admitting in evidence the hammer, gun and money, Exhibits D, E, F and F-1 (the envelope containing the money). It is said the proper foundation was not laid for receipt of the exhibits. As to F and F-1, the principal objection seems to be that the property clerk at the city jail was not produced as a witness. We think failure to call the property clerk was not necessary to the admissibility of the money and the envelope under the circumstances here.

There is ample evidence $36.18 in coins of various amounts and a worn and torn dollar bill were found in defendant's pocket at the scene of the break-in, the money was counted by one officer in the presence of two others, placed in the envelope and then put in the property locker. The envelope and its contents, including the worn and torn bill and the various coins, were produced at the trial in the same basic condition as when they were deposited in the locker. Why the property clerk—or anyone—would want to remove from the envelope the coins originally placed there and substitute others of the same total amount and generally of similar denominations is difficult to understand and no motive for doing so is suggested. Failure to call the property clerk as a witness went to the weight of the evidence rather than its admissibility. Closely in point is State v. Shilinsky, 248 Iowa 596, 599, 600, 81 N.W.2d 444, 447. See also People v. Pittman, 28 Ill.2d 100, 190 N.E.2d 802.

Lieutenant Teale testified he found the hammer and gun under the pool table near the place defendant was hiding. Officer Belieu said he saw Teale coming out from under the table with the hammer and gun in his hands, Teale handed the exhibits to Belieu who marked them for identification, defendant

admitted owning the hammer but denied owning the gun, Belieu identified the exhibits as the ones Teale handed him. Teale also testified both Exhibits D and F were the ones he found under the pool table near the place he saw defendant and, except for its identification tag, each was in the same condition as when he first observed it.

Defendant seems to think the identification of these exhibits by Officer Belieu insufficient because he first saw them in Lieutenant Teale's hands rather than under the pool table and that Teale's identification was insufficient because he did not testify the identification tags were the ones Belieu placed on the exhibits. We are also told the State did not show defendant's fingerprints were on the exhibits, nor the serial number of the gun, nor that the hammer and gun were actually used in committing the crime.

These and other matters suggested by defendant went to the weight to be accorded the exhibits, not to their admissibility. Their identification as articles in defendant's possession at the time and place of the break-in, suitable and available for use in committing the crime, was sufficient to support their receipt in evidence. Indeed it seems to be a reasonable inference that the hammer was actually used in knocking the wood from the door to the building and gaining entrance to it.

It is not necessary under such circumstances as we have here that the serial number of a revolver be shown in order to render it admissible in evidence, even though it probably cannot be positively identified unless the number is taken. See in this connection State v. Taylor, 196 Iowa 1015, 1020, 1021, 192 N.W. 294, 295, 296; State v. Bales, 246 Iowa 446, 451, 68 N.W.2d 95, 98; State v. Poffenberger, 249 Iowa 480, 483, 484, 87 N.W.2d 441, 443; State v. Harless, 249 Iowa 530, 534, 535, 86 N.W.2d 210, 212, 213; State v. Ladehoff, 255 Iowa 659, 664, 122 N.W.2d 829, 832.

We have held many times "The trial court has considerable discretion in determining the admissibility of demonstrative evidence but great latitude is shown in admitting it and it is usually received if it affords a basis for a reasonable inference on a point in issue." State v. Williams, 245 Iowa 494, 505,

62 N.W.2d 742, 748; State v. Poffenberger, supra; State v. Shilinsky, supra, 248 Iowa 596, 600, 81 N.W.2d 444, 447. See also State v. Triplett, 248 Iowa 339, 350, 79 N.W.2d 391, 397, 398; State v. Fisk, 248 Iowa 970, 975, 83 N.W.2d 581, 583. We find no abuse of discretion here.

II. The assigned error in admitting testimony of deputy sheriff-jailer Spangler as to defendant's escape from jail and flight while awaiting trial is without merit.

Spangler testified defendant was received in the county jail on January 9; on February 29 a jailbreak occurred in which defendant, and prisoners Agee and Byers, all confined in the fifth cellblock, escaped; defendant was returned to the jail March 6. One objection to this testimony, although made belatedly, is that no proper foundation was laid for it and there was no showing defendant intended to flee to avoid prosecution for the crime charged in the information filed February 11.

Any lack of certainty in laying a foundation for Spangler's testimony, in the sense of showing his knowledge of defendant's escape and purpose in doing so, was promptly supplied by defendant's own testimony on examination by his counsel that he "left the jail because of this charge." Defendant also testified he dyed his hair two days after "we broke out of jail, so I wouldn't be recognized."

The objection that the evidence of escape and flight was irrelevant and immaterial and prejudicial to defendant's rights was rightly overruled. It is well established that evidence of escape from custody and flight of an accused is admissible as a criminating circumstance. We have so held many times. It is sufficient to cite State v. O'Meara, 190 Iowa 613, 625, 177 N.W. 563; State v. Heath, 202 Iowa 153, 156, 209 N.W. 279. See also 22A C. J. S., Criminal Law, section 625a, and citations note 69, page 462; 20 Am. Jur., Evidence, section 293.

The fact legitimate evidence, such as that of escape here, may be prejudicial to an accused in the sense of injuring his defense is not a proper ground for excluding it. State v. Stansberry, 182 Iowa 908, 912, 166 N.W. 359, 360, 361; State v. Triplett, supra, 248 Iowa 339, 350, 79 N.W.2d 391, 397.

Defendant objected to jury Instruction 8 on flight mainly

on the ground the evidence thereof should not have been received for the reasons heretofore considered and held to be without merit. State v. Agee, 257 Iowa 1345, 1349, 136 N.W.2d 419, 421, holds a like contention as to a similar instruction by the same judge on the trial of one of those who escaped from the same cellblock at the time this defendant did was wholly without merit. Our opinion states, "The reason for flight by one in custody is a question for the jury." See also State v. Barton, 258 Iowa 924, 929, 140 N.W.2d 886, 890, and citations.

█ In 23A C. J. S., Criminal Law, section 1185, states: "It is proper * * *, in charging on the flight of accused, to tell the jury that it is a circumstance which may be considered by them, and from which they may draw an inference of guilt in connection with other circumstances."

This is the effect of the instruction here. The instruction does not say evidence of flight creates a presumption of guilt.

III. The final assigned error is in the giving of Instruction 12 on the weight to be accorded the testimony of defendant. It states this is a question for the jury to determine as in the case of any other witness. The instruction contains this statement:

"In considering and weighing his testimony you are not required to receive the testimony of the defendant as true, but to give it full and careful consideration, and determine whether it or any part of it is true or false, and whether such testimony is given by the defendant in good faith or for the purpose of avoiding conviction."

Instruction 12 goes on to say the jury *may* consider defendant's interest in the outcome and *should* give his testimony such weight as "you deem it entitled to in view of all the evidence" (emphasis added).

█ Defendant made no objection at anytime to Instruction 12 in the trial court although the proposed instructions were submitted to his counsel before they were read to the jury and he reserved his right to object to them. We are not required to consider an objection first urged here to an instruction and ordinarily do not do so. State v. Post, 255 Iowa 573, 584, 123 N.W.2d 11, 18; State v. Roberts, 255 Iowa 166, 173, 121 N.W.2d

513, 517; State v. Pullen, 252 Iowa 1324, 1327, 110 N.W.2d 328, 331, and citations; State v. Kramer, 252 Iowa 916, 918, 109 N.W.2d 18, 19. See also State v. Jones, 253 Iowa 829, 834, 113 N.W.2d 303, 306, 307, and citations.

Defendant thinks section 793.18, Codes, 1962, 1966, requires us to consider the objection to Instruction 12 raised here. This statute provides that where a defendant takes the appeal we "must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands; * * *."

It is true we have, on occasion and when the record showed a fair trial had not been had, proceeded under section 793.18 to reverse a conviction. But these were extreme cases in each of which the record amply showed defendant did not have a fair trial. State v. Kramer, supra, at page 919 of 252 Iowa, page 20 of 109 N.W.2d, and citations.

"The duty placed on this court by section 793.18 is to decide criminal appeals according to the very justice of the case as shown by the record without regard for technical errors [citation]. It requires us to enter such judgment as the law demands" [citation]. State v. Kelley, 253 Iowa 1314, 1318, 115 N.W.2d 184, 186.

 As a matter of grace we have considered the objection here urged to Instruction 12 and hold the conviction should not be reversed on this ground. The objection pressed upon us is that since Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106, forbids comment on a defendant's failure to testify, this instruction is also a violation of the Fifth Amendment provision "No person * * * shall be compelled in any criminal case to be a witness against himself." Incidentally the Griffin case was decided April 28, 1965. The present trial was concluded in March and sentence passed April 3, 1964.

It cannot be claimed the Griffin decision has direct application here. Basis for it is that comment on a defendant's failure to testify cuts down on his constitutional privilege not to testify by making its assertion costly. Nothing in this Instruction 12 does this. This conclusion is implicit in the holding of

Reagan v. United States, 157 U. S. 301, 311, 15 S. Ct. 610, 613, 39 L. Ed. 709, 712. See also Caldwell v. United States, 8 C. A., Mo., 338 F.2d 385, 392; Foley v. United States, 8 Cir., Mo., 290 F.2d 562, 569; United States v. Sullivan, 2 Cir., N.Y., 329 F.2d 755, 756, 757 (certiorari denied 377 U. S. 1005, 84 S. Ct. 1943, 12 L. Ed.2d 1054).

The Reagan opinion points out the trial court may not instruct that the defendant is to be disbelieved because he is a defendant but "may, and sometimes ought, to remind the jury that interest creates a motive for false testimony; that the greater the interest the stronger is the temptation, and that the interest of the defendant in the result of the trial is of a character possessed by no other witness, and is therefore a matter which may seriously affect the credence that shall be given to his testimony. The court should be impartial between the government and the defendant."

In 21 Am. Jur.2d, Criminal Law, section 358, page 385, states:

"Where the defendant voluntarily takes the witness stand in his own behalf, he waives his constitutional privilege of not answering proper questions that may tend to convict him of the crime for which he is on trial, he subjects himself to the same rules that govern other witnesses, and he subjects himself to cross-examination and impeachment to the same extent as any other witness in the same situation. * * *.

"His voluntary offer of testimony upon any fact is a waiver as to all other relevant facts because of the necessary connection between them all. Under this rule the accused, by taking the witness stand in his own behalf, waives the constitutional guaranty against compulsory self-incrimination not only as to matters about which he has given testimony in chief, but also concerning any matter pertinent to the issue on trial regardless of the extent of the direct examination, and cannot then refuse to testify to any fact which would be competent evidence in the case if proved by any other witness."

Precedents which support the foregoing include Brown v. United States, 356 U. S. 148, 78 S. Ct. 622, 2 L. Ed.2d 589, 72 A. L. R.2d 818; Johnson v. United States, 318 U. S. 189, 63

S. Ct. 549, 87 L. Ed. 704; People v. Morehouse, 328 Mich. 689, 44 N.W.2d 830, 834, 34 A. L. R.2d 676 (certiorari denied 341 U. S. 922, 71 S. Ct. 739, 95 L. Ed. 1355); State v. Hanson, N. D., 73 N.W.2d 135, 139.

An instruction containing substantially the same statement as that previously quoted from Instruction 12 has been held not to be objectionable in State v. Mecum, 95 Iowa 433, 437, 438, 64 N.W. 286; State v. Walker, 133 Iowa 489, 497, 110 N.W. 925; State v. Parsons, 209 Iowa 540, 542, 228 N.W. 307; State v. Mikesh, 227 Iowa 640, 644, 645, 288 N.W. 606; State v. Sauerbry, 233 Iowa 1076, 1081, 10 N.W.2d 544, 546; State v. Anderson, 240 Iowa 1090, 1099, 38 N.W.2d 662, 666; State v. Stout, 247 Iowa 453, 459, 74 N.W.2d 208, 211, 212.

There is no dissent on the point now considered from any of the opinions just cited. State v. Walker, supra, has also been approved in several other precedents. State v. Stuart, 190 Iowa 476, 480, 180 N.W. 186; State v. Wrenn, 194 Iowa 552, 559, 188 N.W. 697; State v. Kendall, 200 Iowa 483, 489, 203 N.W. 806. See also State v. Gibson, 228 Iowa 748, 753, 754, 292 N.W. 786. For a full discussion of instructions on credibility of an accused as a witness see annotation, 85 A. L. R. 523.

What precedes and follows the statement heretofore quoted in full from Instruction 12 is certainly proper and similar language in instructions has been widely approved.

In our opinion the error now claimed in giving Instruction 12 did not amount to denial of a fair trial for defendant. Indeed we think he has no just cause for complaint at the treatment received from the trial court or this court. See State v. Higgins, 192 Iowa 201, 182 N.W. 887, and citations; State v. Anderson, supra, 240 Iowa 1090, 1098, 1099, 38 N.W.2d 662, 666, 667; State v. Post, supra, 255 Iowa 573, 586, 123 N.W.2d 11, 19; State v. Meyers, 256 Iowa 801, 806, 129 N.W.2d 88, 92.

State v. Anderson, supra, is peculiarly applicable. It holds defendant was not denied a fair trial by the giving of such an instruction as No. 12 to which objection was first raised in this court.—Affirmed.

LARSON, THORNTON, SNELL and MOORE, JJ., concur.

STUART, J., concurs in result.

RAWLINGS, MASON and BECKER, JJ., dissent.

RAWLINGS, J.—Being unable to agree with Division III of the majority opinion relative to the giving of a special instruction where an accused testifies in his own behalf I respectfully dissent.

In Griffin v. State of California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106, the United States Supreme Court proclaimed a constitutionally based ban on any comment by the court or prosecuting attorney upon failure of an accused to testify.

We held accordingly in State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518.

The question now presented is as follows: If an accused takes the witness stand in his own defense may the court single him out by a special instruction as to the weight to be accorded his testimony alone? My answer is in the negative.

Any other conclusion would mean that if an accused remains silent neither the court nor the prosecutor may comment on that fact, but if he elects to speak out on his own behalf his testimony may be accorded singular comment by the court.

It is doubtful at best this would serve to accord an accused a fair trial.

I submit Griffin v. State of California, supra, is most persuasive on the point at hand, if not controlling.

Furthermore we have said time after time: "The office of an instruction is to state the rule of law applicable and pertinent to the matter to be determined, and not to marshal the evidence, or by special mention to give undue prominence to any particular phase or feature of the fact case made by either party to the controversy. Nor can the court be expected to give express or special warning against every possible mistake or misapprehension into which the jury may fall in the discharge of its functions. *Something must be left to the intelligent appre-*

*hension and application by the jurors themselves of the general rules stated in the court's instructions."* Kelly v. Chicago, R. I. & P. Ry. Co., 138 Iowa 273, 277, 278, 114 N.W. 536, 128 Am. St. Rep. 195.

See also In re Condemnation of Certain Land, 256 Iowa 43, 50, 126 N.W.2d 311; State v. Williams, 238 Iowa 838, 845, 28 N.W.2d 514; People v. Holick, 337 Ill. 333, 169 N.E. 169, 173; and Reid's Branson, Instructions to Juries, Third Ed., section 107, page 295.

In this case, as usual, the standard instruction to the jury on weight and credibility to be accorded the testimony of *all* witnesses was given, which included the following: "* * * their interest or lack of interest in the result of the trial, their relation or feeling, if any, toward the parties, the motives, if any, actuating them as witnesses". See Instruction 1.5, Uniform Jury Instructions.

This all-embracing instruction surely serves to negate the need for or the right to give a special instruction as to the weight and credibility to be accorded the testimony of an accused alone. I would reverse and remand for a new trial.

MASON and BECKER, JJ., join in this dissent.